**Vernadine BOYKIN, Appellant,**

v.

**DISTRICT OF COLUMBIA, Appellee.**

No. 83–39.

District of Columbia Court of Appeals.

Argued June 6, 1984.

Decided Nov. 26, 1984.

Roderic L. Woodson, Washington, D.C., for appellant.

Edward E. Schwab, Asst. Corp. Counsel, Washington, D.C., with whom Inez Smith Reid, Corp. Counsel, John H. Suda, Principal Deputy Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on brief, for appellee.

Before NEBEKER, BELSON and TERRY, Associate Judges.

BELSON, Associate Judge:

This case arises out of a sexual assault on a student by an employee of the District of Columbia public schools during the school day and in a school building. The primary question on appeal is whether, as a matter of law, the employee's tortious conduct was outside the scope of his employment. We hold that it was and affirm the trial court's grant of summary judgment in favor of the District of Columbia.

The underlying facts are essentially undisputed. Valerie Boykin was a 12-year-old student in a special program at Jackson Elementary School. Due to birth defects, Valerie was deaf, blind and mute. Maurice Boyd, himself blind, was Field Coordinator of the Deaf/Blind Program in which Valerie was enrolled. He was responsible for coordinating all services in the District related to the identification, assessment, and medical and educational programming for deaf/blind children. Boyd's duties also included training blind students to avoid walking into obstacles and helping to calm down students who were misbehaving in class.

Valerie was one of the students whom Boyd on occasion had taken for such walks. He did so on February 1, 1977, after the lunch period. At that time, a school custodian observed Boyd sexually assaulting Valerie in the school cafeteria. As a result of that incident, Boyd resigned from the school system and pleaded guilty to a criminal charge of assault.

A civil suit was filed on Valerie's behalf against Boyd and the District of Columbia. On March 3, 1980, a default was entered against Boyd, subject to ex parte proof. Valerie subsequently died, but the action against the District was maintained by her mother, Vernadine Boykin, as Valerie's legal representative. Boykin contended that the District was liable for damages either vicariously, based on the theory of *respondeat superior,* or directly, for negligence in hiring or supervising Boyd. The trial court, concluding that there was no genuine issue of material fact, granted the District of Columbia's motion for summary judgment. This appeal followed.[1]

■ Under the doctrine of *respondeat superior,* an employer may be held liable for the acts of his employees committed within the scope of their employment. *Penn Central Transportation Co. v. Red-*

---

1. Although the trial court has not yet entered judgment against codefendant Boyd, it did enter the certification under Super.Ct.Civ.R. 54(b) that made the summary judgment final and appealable.

*dick*, 398 A.2d 27, 29 (D.C.1979). As a general rule, whether an employee is acting "within the scope of his employment" is a question of fact for the jury. It becomes a question of law for the court, however, if there is not sufficient evidence from which a reasonable juror could conclude that the action was within the scope of the employment. *Johnson v. Weinberg*, 434 A.2d 404, 408–09 (D.C.1981); *Penn Central Transportation Co., supra*, 398 A.2d at 31–32; *Meyers v. National Detective Agency, Inc.*, 281 A.2d 435, 437 (D.C.1971); *Jordan v. Medley*, 228 U.S. App. D.C. 425, 429, 711 F.2d 211, 215 (1983).

In *Penn Central Transportation Co., supra*, 398 A.2d at 32, this court held as a matter of law that a railroad employee's assault on a taxi driver was outside the scope of his employment because "his conduct was in no sense, either wholly or partially in furtherance of [the railroad's] business." The employee in that case had served as brakeman on the train from Alexandria, Virginia, to New Jersey. The next day he rode a train back to Union Station in Washington, receiving full pay for traveling as a passenger. Upon arriving at the station the employee sought to hire a taxi to return to Alexandria. He became involved in a dispute with the driver whom he approached, apparently over the driver's desire to use the station restroom before taking the employee to his destination. The employee became enraged and kicked the driver with his steel-toed railman's boots. This court observed that it was unnecessary to decide whether the employee was "on duty" at the time of the assault, and concluded:

> The violent and unprovoked nature of [the employee's] attack indeed suggests a personal as distinguished from business-related motive. Further, the altercation between [the taxi driver] and [the employee] was neither a direct outgrowth of the employee's instructions or job assignment, nor an integral part of the employer's business activity, interests or objectives. There is nothing in the business of running a railroad that

makes it likely that an assault will occur between a railroad brakeman and a taxicab driver over the celerity with which the latter will provide a taxicab ride to the former.

*Id.* The employee's assault was in no degree committed to serve the railroad's interests, the court held. Rather, it was done "solely for the accomplishment of the independent malicious or mischievous purposes of the servant." *Id.* (quoting *Great A & P Tea Co. v. Aveilhe*, 116 A.2d 162, 165 (D.C.1955)).

We think the reasoning of *Penn Central v. Reddick* is applicable to this case. The sexual attack by Boyd on Valerie was unprovoked. It certainly was not a direct outgrowth of Boyd's instructions or job assignment, nor was it an integral part of the school's activities, interests or objectives. Boyd's assault was in no degree committed to serve the school's interest, but rather appears to have been done solely for the accomplishment of Boyd's independent, malicious, mischievous and selfish purposes.

Appellant Boykin would have us hold that the assault was a direct outgrowth of Boyd's assignment because that assignment necessarily included some physical contact with Valerie. She notes that a deaf, blind and mute child can be taught only through the sense of touch. The fact that physical touching was necessarily a part of the teacher-student relationship made it foreseeable that sexual assaults could occur, she argues. We reject this connection as too attenuated. We do not believe that a sexual assault may be deemed a direct outgrowth of a school official's authorization to take a student by the hand or arm in guiding her past obstacles in the building.

In that regard, we conclude that this case is distinguishable from *Johnson v. Weinberg, supra*, 434 A.2d 404, and *Lyon v. Carey*, 174 U.S.App.D.C. 422, 533 F.2d 649 (1976), on which Boykin relies. *Johnson v. Weinberg* involved a shooting of a

laundromat patron by an employee of the laundromat. The patron, who had deposited his shirts in a machine and then left, returned to find his shirts missing. The patron questioned the employee about the shirts intermittently over the course of several hours. Finally, just as the patron appeared to have abandoned the subject and was leaving, the employee drew a gun and shot him. The trial court directed a verdict in favor of the laundromat owner, holding that the employee's action was outside the scope of employment. This court reversed, holding that there was sufficient evidence from which a reasonable person could find that the shooting was "the outgrowth of a job-related controversy." 434 A.2d at 409. We noted that, in the interest of his employer, the employee would sometimes remove clothes from the machines so that empty machines would be available for other patrons. This made it likely that the employee would be confronted if a patron who had deposited his laundry was later unable to find it. Further, there was no evidence that the employee and the patron had had previous dealings that would indicate that the tort was personal. Thus, we concluded, "[t]he assault arose out of the transaction which initially brought [the patron] to the premises (to launder shirts) and was triggered by a dispute over the conduct of the employer's business (missing shirts)." *Id.* [2]

We think that *Johnson v. Weinberg* approaches the outer limits of the liability that may be imposed under *respondeat superior*. *See* RESTATEMENT (SECOND) OF AGENCY § 245 comment f (1958) ("the fact that the servant acts in an outrageous manner or inflicts a punishment out of all proportion to the necessities of his master's business is evidence indicating that the servant has departed from the scope of employment in performing the act"). We

decline to extend its reach to cover the facts of this case. The sexual assault here arose out of Boyd's assignment only in the sense that Boyd's walks with the student afforded him the *opportunity* to pursue his personal adventure. This is insufficient to make the District vicariously liable for Boyd's act. *See Bozarth v. Harper Creek Board of Education,* 94 Mich.App. 351, 355, 288 N.W.2d 424, 426 (1979) (as a matter of law, a homosexual assault by a teacher on a student is outside the scope of the teacher's employment; "[t]he mere fact that an employee's employment situation may offer an opportunity for tortious activity does not make the employer liable to the victim of that activity"); *Gambling v. Cornish,* 426 F.Supp. 1153, 1155 (N.D.Ill. 1977) (as a matter of law, rape of woman by police officers who were able to retain custody of her because of their official status was outside the scope of employment).

*Lyon v. Carey, supra,* 174 U.S.App.D.C. 422, 533 F.2d 649 (1976), is distinguishable along similar lines. In that case, a young man employed by a trucking company to deliver a mattress raped and otherwise assaulted the woman to whom the delivery was to be made. The evidence showed that in the course of the delivery a dispute arose as to whether the mattress should be brought upstairs and whether payment of the C.O.D. payment balance should be by check or by cash. The Circuit Court held that "[a]lthough the assault was perhaps at the outer bounds of *respondeat superior,* the case was properly one for the jury." *Id.* at 424, 533 F.2d at 651. The court noted that deliverymen endeavoring to serve their masters are likely to come into conflict with customers. In this case, the court said, "The dispute arose out of the very transaction which had brought [the

---

**2.** In *Jordan v. Medley, supra,* 228 U.S.App.D.C. at 428, 711 F.2d at 214, the Circuit Court stated that certain language in *Johnson, supra,* 434 A.2d at 408, "seems more compatible with an approach that would substitute foreseeability for intent to further the employer's business." We agree with the Circuit Court that such an

approach would be inconsistent with previous cases in this jurisdiction. However, a close reading of *Johnson* discloses that this court did not suggest that an employer could be held liable where the employee was not motivated, at least in part, by an intent to further his employer's business.

deliveryman] to the premises, and, according to the plaintiff's evidence, out of the employer's instructions to get cash only before delivery." *Id.* at 425, 533 F.2d at 652.

The Circuit Court in *Lyon v. Carey* distinguished that case from *Grimes v. B.F. Saul Co.*, 60 App.D.C. 47, 47 F.2d 409 (1931). In *Grimes* the court held as a matter of law that the owner of an apartment building was not liable for an attempted rape on a tenant perpetrated by an employee hired to inspect the building concerning certain needed repairs. The employee gained access to the tenant's apartment by professing to make an inspection of the building. The court held that the allegations of the complaint did not show that the wrongful act was done "in the furtherance of the employer's business" but rather that it was "an independent trespass of the agent, utterly without relation to the service which he was employed to render for the defendant." *Id.* at 48, 47 F.2d at 410.

 There is no suggestion here, as there was in *Lyon v. Carey*, that the employee's conduct was the outgrowth of any action undertaken in the employer's behalf. We think this case more closely resembles *Grimes, supra.* We conclude that Boyd's conduct in this case, like that of the employee in *Grimes*, was "utterly without relation to the service which he was employed to render." *Id.* at 48, 47 F.2d at

410. Accordingly, we affirm the trial court's conclusion, that as a matter of law, Boyd was acting outside the scope of his employment when he assaulted Valerie Boykin.[3]

## II

In the complaint, Boykin alleged that the District had been negligent in hiring Boyd and in failing to supervise him properly. The District, in moving for summary judgment, asserted "[t]hat no evidence exists that the District knew or should have known of any proclivity or history of assaults by Maurice Boyd." In her opposition to the motion for summary judgment, Boykin did not dispute this assertion. Indeed, Boykin there made no reference at all to negligence in hiring Boyd. She did assert that there was a genuine issue of fact with regard to whether the District was negligent in supervising Boyd. However, it appears that her contention was limited to an assertion that it was negligent for the District to allow *any* teacher to have one-on-one contacts with a student such as Boyd had with Valerie. Accordingly, the trial court was entitled to assume that Boykin admitted there was no evidence the District knew or should have known that Boyd posed a danger to students greater than that posed by any other teacher. Super.Ct.Civ.R. 12–1(k). Similarly, on appeal, Boykin has not asserted that she had

---

3. Appellant Boykin appears to be suggesting in her brief that the District should be held vicariously liable for Boyd's assault even if it was committed outside the scope of his employment. She would base this broader liability on the notion that schools have a "protective responsibility" for their students—particularly since children are *obliged* to attend school. This argument was not presented to the trial court in appellant's opposition to the plaintiff's motion for summary judgment. Boykin stated that there was a genuine dispute (1) whether Boyd was acting within the scope of his employment, and (2) whether the District was negligent in supervising Boyd. Accordingly, we need not address this issue on appeal. *See Gillespie v. Washington*, 395 A.2d 18, 21 (D.C.1978) (rule that party who fails to raise issue at trial generally waives it on appeal applies in case of sum-

mary judgment); *Calhoun v. Freeman*, 114 U.S. APp.D.C. 385, 387, 316 F.2d 386, 388 (1963) (declining to consider on appeal of grant of summary judgment issues not raised before trial court). *See also Miller v. Avirom*, 127 U.S.App. D.C. 367, 384 F.2d 319 (1967) (setting forth reasons why appellate courts generally will not consider issues not raised in trial court).

In any event, Boykin has cited us to no authority that would authorize imposition of vicarious liability *on a school* for acts of employees beyond the scope of employment. Her sole citation is to a section of Prosser that discusses the broader liability imposed on common carriers, innkeepers and hospitals. W. PROSSER, LAW OF TORTS, § 70, at 465 (4th ed. 1971). We decline to pass upon the issue on this record.

shown in the trial court that there was reason to think that Boyd might have been dangerous.

Boykin nevertheless asserts that instances of child abuse are sufficiently common that intentional torts of this sort are foreseeable if children are allowed to be left unaccompanied in the presence of school personnel. Thus, she argues, it was negligent of the District to have permitted such one-on-one contacts. We disagree. In a case such as this where the injury was caused by the intervening criminal act of a third party, the District is liable for negligence only if the danger of that act "should have been reasonably anticipated and protected against." *Lacy v. District of Columbia,* 424 A.2d 317, 323 (D.C.1980) (quoting *St. Paul Fire & Marine Insurance Co. v. James G. Davis Construction Corp.,* 350 A.2d 751, 752 (D.C.1976)). Normally an actor in the District's position has less reason to anticipate intentional criminal misconduct than to anticipate negligence "since under ordinary circumstances it may reasonably be assumed that no one will violate the criminal law." RESTATEMENT (SECOND) OF TORTS, § 302B comment d (1965). Moreover, in determining whether the District was negligent, the trier must balance against the probability and gravity of the risk the utility of permitting this kind of one-on-one teacher-student interaction. W. PROSSER, LAW OF TORTS § 31, at 148 (4th ed. 1971); RESTATEMENT (SECOND) OF TORTS, *supra,* § 302B comment f.[4]

Here, in support of its motion for summary judgment, the District appended an affidavit by Allen Jefferson Garrett, the coordinator of the South Atlantic Regional Center for Deaf-Blind Services, who administers federal deaf-blind services grants for a six-state region that includes the District of Columbia. In that affidavit Garrett stated that one-on-one sessions between deaf/blind students and teachers or administrators are frequently employed in such programs and are not inappropriate. In response, Boykin tendered no contradictory affidavit but merely asserted that the District had a duty to supervise Boyd to ensure that he did not take impermissible advantage of this situation. We conclude that this was insufficient to show that there was a genuine issue as to the District's negligence. The uncontradicted Garrett affidavit established that one-on-one interaction between teachers and students is not viewed by education experts as posing a risk of intentional harm against the student sufficient to outweigh the benefits of such individualized attention.

In the absence of other than general allegations by Boykin to the contrary, the trial court did not err in granting summary judgment in favor of the District. *See Sledd v. Washington Metropolitan Area Transit Authority,* 439 A.2d 464, 469 (D.C. 1981) (per curiam) (evidence of conformity to industry custom entitled defendant to summary judgment where plaintiff failed to introduce any evidence that adhering to industry standards created unreasonable danger); Super.Ct.Civ.R. 56(e). *See also Cook v. Safeway Stores, Inc.,* 354 A.2d 507 (D.C.1976) (no duty to station security guards in grocery store to protect customers even though injury from criminal misconduct might be remotely foreseeable;

---

4. Comment f of § 302B of the RESTATEMENT states:

It is not possible to state definite rules as to when the actor is required to take precautions against intentional or criminal misconduct. As in other cases of negligence (see §§ 291–293), it is a matter of balancing the magnitude of the risk against the utility of the actor's conduct. Factors to be considered are the known character, past conduct, and tendencies of the person whose intentional conduct causes the harm, the temptation or opportunity which the situation may afford him for such misconduct, the gravity of the harm which may result, and the possibility that some other person will assume the responsibility for preventing the conduct or the harm, together with the burden of the precautions which the actor would be required to take. Where the risk is relatively slight in comparison with the utility of the actor's conduct, he may be under no obligation to protect the other against it.

grant of directed verdict after plaintiff's opening statement affirmed); *St. Paul Fire & Marine Insurance Co. v. James G. Davis Construction Corp.*, *supra*, 350 A.2d 751 (possibility that arsonist would set fire to debris left by defendant near plaintiff's property held not reasonably foreseeable; grant of directed verdict proper).

Accordingly, the judgment of the trial court is

*Affirmed.*