**DISTRICT OF COLUMBIA, Appellant,**

v.

**Thomas A. CORON, Appellee.**

**No. 84–1131.**

District of Columbia Court of Appeals.

Argued April 16, 1986.
Decided Oct. 1, 1986.

Edward E. Schwab, Asst. Corp. Counsel, with whom John H. Suda, Acting Corp. Counsel at the time brief was filed, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on brief, for appellant.

Thomas Abbenante, for appellee.

Before NEBEKER, TERRY and STEADMAN, Associate Judges.

NEBEKER, Associate Judge:

The District of Columbia appeals from a jury verdict holding it liable for the intentional tort of one of its employees, a police officer, based solely on the principles of *respondeat superior.* In this appeal, the District argues that the trial court erred in denying its motions for directed verdict and judgment notwithstanding the verdict because the officer's acts were outside the scope of his employment. We agree with the District and reverse.

I

On January 20, 1977, Metropolitan Police Department Officer Thomas Guidotti was driving his own automobile down Wisconsin Avenue in Georgetown with a fellow officer, Jay Wendell, after both had been drinking at a private party. Both officers were off-duty, out of uniform, and headed for a bar. Appellee Thomas Coron and a friend, Steven Dahllof, were crossing Wisconsin Avenue in a pedestrian crosswalk with the right of way when Guidotti's automobile came to a screeching halt at the crosswalk, nearly hitting Coron and Dahllof. As Coron and Dahllof crossed in front of Guidotti's automobile, which was headed south in the northbound lane, Guidotti gunned his engine menacingly several times and then drove through the red light and came to a stop in the southbound lane. By this time, Coron and Dahllof had reached the sidewalk and were walking south along Wisconsin Avenue toward the intersection of Dumbarton Street and Wis-

consin Avenue. As Coron stepped from the curb to cross Dumbarton Street, Guidotti sped onto Dumbarton Street from Wisconsin Avenue, nearly running down Coron a second time. Coron kicked at Guidotti's car and Guidotti immediately stopped; both Guidotti and Wendell jumped from the car, knocked Coron to the ground, and repeatedly punched him in the stomach and face.[1] At one point, while in the middle of Dumbarton Street, Guidotti was on top of Coron straddling his chest; Guidotti grabbed Coron's head and ears and beat Coron's head into the pavement. At this point, Guidotti stated "who the hell do you think you are, kicking my car. I'm a policeman." After several minutes, Guidotti and Wendell decided to move on; as Coron got up from the ground, he asked if they were really police officers. Guidotti shoved Coron to the ground and stated that he would regret running into them and kicking a policeman's car. Both Guidotti and Wendell then displayed their police badges and Wendell stated "we both have guns and we know how to use them." Both officers then left the scene and Coron called the police.

Coron filed suit against both Guidotti and the District of Columbia.[2] At trial, the District moved for a directed verdict on the ground that Guidotti's actions were outside the scope of his employment. The trial court denied the motion. After the District presented its defense, it renewed its motion for a directed verdict, which the trial court again denied. The court submitted the issue of the District's liability under the doctrine of *respondeat superior* to the jury, which ultimately returned a verdict against the District. The trial court denied the District's motion for judgment notwithstanding the verdict.

## II

The doctrine of *respondeat superior* permits an employer to be held liable for the acts of his employees committed within the scope of their employment. *Boykin v. District of Columbia*, 484 A.2d 560, 561 (D.C.1984); *Penn Central Transportation Co. v. Reddick*, 398 A.2d 27, 29 (D.C.1978). Although the jury generally determines whether an employee's actions are "within the scope of employment" based upon the facts of the case, if there is insufficient evidence to permit a reasonable juror to draw such a conclusion it becomes a question of law for the court. *Boykin, supra*, 484 A.2d at 562; *Johnson v. Weinberg*, 434 A.2d 404, 408–09 (D.C.1981); *Penn Central Transportation Co., supra*, 398 A.2d at 31.

In determining whether an employee is within the "scope of employment," this court has recognized the following general rule.

> [W]hatever is done by the employee in virtue of his employment and in furtherance of its ends is deemed by the law to be an act done within the scope of his employment, and that, in determining whether the servant's conduct was within the scope of his employment, it is proper to inquire whether he was at the time engaged in serving his master.

*Penn Central Transportation Co., supra*, 398 A.2d at 29 (quoting 57 C.J.S. *Master and Servant* § 570d(2), at 303 (1948) (footnotes omitted)). Our inquiry into whether Officer Guidotti was engaged in serving the District of Columbia during the altercation with Mr. Coron is further aided by the RESTATEMENT OF AGENCY (SECOND) § 228(2) (1958), which clarifies conduct that is not within the scope of employment.

> Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.

---

1. Coron sustained numerous bruises to his face and eyes, and he had several teeth knocked out of his mouth.

2. Coron also sued Officer Wendell. In addition, Dahllof sued both officers and the District. Prior to trial, these claims were dismissed.

This court has considered scope of employment questions in several cases that are appropriate to the matter before us. In *Boykin, supra,* this court held as a matter of law that a sexual assault by an employee of the District of Columbia public schools upon a student was outside the scope of the employee's employment. The sexual assault in *Boykin* occurred during the work day while the employee was on duty. Although the court acknowledged that the employee's assignment responsibilities included some physical contact with students, the court rejected the argument that sexual assaults were, therefore, foreseeable. The court specifically recognized that the employee's assignment responsibilities merely provided "the *opportunity* to pursue his personal adventure." *Boykin, supra,* 484 A.2d at 563 (emphasis in original).

In *Penn Central Transportation Co., supra,* this court concluded as a matter of law that an assault on a taxi driver committed by a railroad's employee was not within his scope of employment because "his conduct was in no sense, either wholly or partially in furtherance of [his employer's] business." *Penn Central Transportation Co., supra,* 398 A.2d at 32. The employee in *Penn Central Transportation Co.* became enraged and repeatedly kicked the taxi driver with his steel-toed shoes when the driver wanted to use a station restroom before taking the employee to his destination. The court held that it was unnecessary to determine whether the employee was "on duty" at the time of the assault, stating as follows:

> The violent and unprovoked nature of [the employee's] attack indeed suggests a personal as distinguished from business-related motive. Further, the altercation between [the taxi driver] and [the employee] was neither a direct outgrowth of the employee's instructions or job assignment, nor an integral part of the employer's business activity, interests or objectives. There is nothing in the business of running a railroad that makes it likely that an assault will occur between a railroad brakeman and a taxicab driver over the celerity with which the latter will provide a taxicab ride to the former.

*Id.*

 Mr. Coron argues that certain Metropolitan Police Department regulations require officers always to be "on duty" and to carry their service revolvers, badges and identification cards. Thus, Coron asserts, Guidotti was "on duty" at the time of the incident and the District is liable for his conduct. We do not, however, interpret such regulations as imposing liability on an employer for the intentional torts of its employee where the employee's conduct was motivated solely by personal reasons. To apply such regulations to a dryly logical extreme, as appellee argues, would impose liability on the District regardless of the nature of an officer's conduct. This we are unprepared to do. Thus, applying the court's holding in *Penn Central Transportation Co.,* we conclude that the very nature of Guidotti's behavior makes it irrelevant whether he was "on duty" at the time of this incident within the meaning of the police regulations.

In resolving this case, it is of particular importance that at no time was Guidotti's conduct in furtherance of the District's interests. Guidotti was dressed in civilian clothing and driving his own automobile on a purely personal venture at the time of the incident. Moreover, from the moment Guidotti stopped his automobile he did not handle the situation in a manner expected of a police officer. Guidotti's entire behavior during this incident reflected that of an individual bent on personal vengeance for a perceived personal affront. Once his purpose had been accomplished, Guidotti left the scene of the incident and continued on his personal venture. Thus, we decline to hold the District liable for Guidotti's conduct because he acted "solely for the accomplishment of [his] independent malicious or mischievous purposes...." *Penn*

*Central Transportation Co., supra,* 398 A.2d at 32.

Accordingly, we reverse the judgment on appeal and remand with directions to enter judgment for the District of Columbia.

*So ordered.*