Leticia GUZEL, Plaintiff,

v.

The STATE OF KUWAIT,
et al. Defendants.

Civ. A. No. 92–0792 (JHG).

United States District Court,
District of Columbia.

March 29, 1993.

Steven D. Kupferberg, Kupferberg & Bernstein, Rockville, MD, and Jayson Amster, Upper Marlboro, MD, for plaintiff.

R. Stan Mortenson, Stuart A. Levey, Miller, Cassidy, Larocca & Lewin, Washington, DC, for defendants.

## MEMORANDUM OPINION AND ORDER

JOYCE HENS GREEN, District Judge.

On April 2, 1992, plaintiff Leticia Guzel ("Guzel") filed a complaint against defendants, Walid Azab Al–Uneizi ("Al–Uneizi") and the State of Kuwait ("Kuwait"). She alleges that on or about September 20, 1991, Al–Uneizi, while acting within the scope of his employment as an agent, officer or servant of the Ministry of Defense of Kuwait, committed an assault and battery upon her by "pushing, holding, striking, and raping plaintiff." Complaint, ¶ 9. As a result of these actions, Guzel claims to have sustained

serious personal injuries, thus incurring significant expenses for her medical care and treatment.

Presently pending is Kuwait's Motion to Dismiss or, in the Alternative, for Summary Judgment and Plaintiff's Motion for Continuance or Refusal of the Defendant State of Kuwait's Motion to Dismiss or, in the Alternative, for Summary Judgment. For the reasons stated below, Kuwait's motion to dismiss is granted[1], and Guzel's motion for continuance is denied.[2]

## BACKGROUND

Leticia Guzel, an employee of the Willard Inter–Continental Hotel ("the Willard") in Washington, D.C., whose duties included the restocking of mini-bars, Complaint ¶ 8; Plaintiff's Motion for Continuance or Refusal of the Defendant State of Kuwait's Motion to Dismiss or, in the Alternative for Summary Judgment ("Plaintiff's Motion"), Affidavit of Plaintiff Leticia Guzel ("Guzel Affidavit"), ¶ 5, has made the following allegations: On or about September 20, 1991, at approximately 11:00 a.m., Guzel was restocking mini-bars on the sixth floor of the hotel. Plaintiff's Motion, Guzel Affidavit, ¶ 6; Complaint, ¶¶ 8, 9. As she approached the vicinity of rooms 610 and 612, she was approached by Al–Uneizi, who conferred with her regarding the restocking of Room 612's mini-bar. Plaintiff's Motion, Guzel Affidavit, ¶ 6. After completing restocking the mini-bar in Room 612,

Guzel proceeded to service the mini-bar in Room 610. *Id.* ¶ 7. "A short time thereafter," Al–Uneizi assaulted her, forcibly "pushing, holding, striking, and raping" her.[3] Plaintiff's Motion, Guzel Affidavit, ¶ 7; Complaint, ¶ 9. After the assault, he gave her a Kuwaiti Flag pin. Supplemental Memorandum in Support of Plaintiff's Response to defendant State of Kuwait's Motion to Dismiss, or in the alternative for Summary Judgment, at 10 n. 10; *see* Plaintiff's Motion, at Exhibit 1 (Plea Agreement, *United States v. Walid Al–Uneizi*, Crim. No. F11290 (Superior Ct. D.C. September 17, 1992), at 17; *see also id.*, Exhibit 2 (transcript, *United States v. Walid Azab Al–Uneizi*, Crim. No. F11290–91 (Superior Ct. D.C. March 28, 1992), at 446–47).

## DISCUSSION

Pursuant to Federal Rule of Civil Procedure 12(b), Kuwait has moved to dismiss the action against it on the ground that this Court lacks jurisdiction over Kuwait pursuant to the Federal Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1330, 1391(f), 1441(d), and 1602–11. In the alternative, Kuwait requests that the Court grant summary judgment. Guzel counters first that the action fits squarely within a FSIA exception and hence Kuwait's motion should be denied, and alternatively she argues that if the motion is to be decided on summary judgment

1. Also pending was Plaintiff's Motion for Leave of Court to File a Supplemental Response which has been granted and that response duly considered. Nonetheless, Guzel is cautioned that, in the future, the Court will not as liberally grant leave to file supplemental pleadings. As in all cases, the parties are directed to confine their arguments to the pleadings authorized by Local Rule 108.

2. Al–Uneizi's position in the Kuwaiti government as well as his duties are contested at this time. Although, Kuwait states that he was in charge of maintaining the clothing, baggage and personal effects of the delegation of Kuwaiti diplomats from the Ministry of Interior who were staying at the Willard Inter–Continental Hotel, Guzel maintains that she needs additional discovery in order to ascertain the veracity of this assertion. The Court does not agree. No further discovery is warranted, nor is it necessary to consider Kuwait's description of Al–Uneizi's duties in order to resolve the motion. Assuming as plaintiff has

stated, that Al–Uneizi was "an agent or officer or servant for the Ministry of Defense of the State of Kuwait," Complaint, ¶ 20, Kuwait must still be dismissed from this case for the reasons discussed *infra*.

3. On November 6, 1991, Al–Uneizi was indicted for the rape of Guzel. At the conclusion of the criminal trial, he was acquitted of rape, however, the jury was unable to reach a unanimous verdict on the lesser included offenses. As a result, a mistrial was declared on April 7, 1992, and approximately five months later, Al–Uneizi entered either an *Alford* plea (as defendant so contends) or a modified *Alford* plea (as plaintiff contends) to the charge of simple assault. Pursuant to the terms of his sentence and probation, Al–Uneizi immediately left the United States and currently resides in Kuwait. He is not permitted to return to the United States during his five-year period of probation unless ordered to do so by the Court for this case.

grounds, she should be granted a continuance in order to propound additional discovery to support her argument that Al–Uneizi acted within the scope of his employment with Kuwait when he allegedly assaulted Guzel.

■ In viewing a motion to dismiss, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). The factual allegations of the complaint must be presumed true and liberally construed in favor of the plaintiff. *Shear v. National Rifle Ass'n,* 606 F.2d 1251, 1253 (D.C.Cir.1979); 5A C. Wright & A. Miller, *Federal Practice and Procedure,* § 1357, p. 304 (1990). The plaintiff is entitled to all favorable inferences which may be drawn from those allegations. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Nevertheless, in making a determination whether to dismiss for lack of jurisdiction, "a district court may consider conflicting evidence—contained in affidavits, for example—and make its own resolution of disputed jurisdictional facts." *Forsythe v. Saudi Arabian Airlines Corp.,* 885 F.2d 285, 289 n. 6 (5th Cir.1989).

■■ Thus, the question presented to the Court is whether the long-established doctrine of sovereign immunity requires dismissal of Kuwait from this action.[4] It is unnecessary at this time to recite the extensive history of sovereign immunity in the United States. It is only necessary to look back to 1976, the year Congress codified the doctrine

of sovereign immunity in the Foreign Sovereign Immunities Act. In pertinent part, the FSIA states that:

> Subject to existing international agreements to which the United States is a party at the time of enactment of this Act a foreign state shall be immune from the jurisdiction of the · courts of the United States and of the States except as provided in sections 1605 to 1607 of this chapter.

28 U.S.C. § 1604 (1988). Then in 1989, interpreting the FSIA's jurisdictional grant, the United States Supreme Court held that the FSIA provides the sole basis for obtaining jurisdiction over a foreign state in United States courts. *Argentine Republic v. Amerada Hess Shipping Corp.,* 488 U.S. 428, 443, 109 S.Ct. 683, 692, 102 L.Ed.2d 818 (1989). Accordingly, personal jurisdiction over a foreign sovereign, like subject-matter jurisdiction, exists only when one of the exceptions to the FSIA applies. *Verlinden B.V. v. Central Bank of Nigeria,* 461 U.S. 480, 493, 103 S.Ct. 1962, 1971, 76 L.Ed.2d 81 (1983).

As a consequence, Guzel has consistently maintained that a FSIA exception applies to the circumstances of her case. Specifically, she invokes 28 U.S.C. § 1605(a)(5) which states:

> (a) A foreign state shall not be immune from the jurisdiction of courts in the United States or of the States in any case—
>
> \* . \* \* \* \* \*
>
> (5) ... in which money damages are sought against a foreign state for personal injury or death, or damage to or loss of property, occurring in the United States and caused by the tortious act or omission

---

4. As a preliminary matter, Guzel's motion for a continuance in order to conduct additional discovery regarding Al–Uneizi's scope of employment must be addressed. Specifically, Guzel seeks discovery to "ascertain information, including, but not limited to, the exact duties of Defendant Al–Uneizi, his exact orders from his superiors, his instructions regarding interaction with hotel employees, and any warnings he may have been given regarding such employees." Memorandum of Points and Authorities in Support of Plaintiff's Motion for Continuance, or Refusal of Defendant State of Kuwait's Motion to Dismiss or, in the Alternative, for Summary Judgment, at 7. Such discovery would clearly be futile in this instance. As earlier stated, even

accepting Guzel's broad and inclusive description of Al–Uneizi as "an agent or officer or servant for the Ministry of Defense of the State of Kuwait," Complaint, ¶ 20, Al–Uneizi's position could not have included assault. It is impossible to hypothesize any position within that description which would encompass or condone sexual assault. Therefore, Guzel's motion for a continuance is denied as futile. *See America West Airlines, Inc. v. GPA Group, Ltd.,* 877 F.2d 793, 801 (9th Cir.1989) (dismissal not abuse of discretion "when it is clear that further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction.") (quoting *Wells Fargo & Co. v. Wells Fargo Express Co.,* 556 F.2d 406, 430–31 (9th Cir.1977)).

of that foreign state or of any official or employee of that foreign state while acting within the scope of his office or employment.

*Id.* To fit within this exception, Guzel must establish that Al–Uneizi was acting within the scope of his employment with Kuwait when he allegedly assaulted her. Not unnaturally, Kuwait contests this conclusion, claiming that any assault committed by Al–Uneizi could in no manner fall within the scope of his employment, and therefore, no jurisdiction can be exercised over Kuwait.

■■■ Whether an employee is acting "within the scope of his office or employment" for purposes of the FSIA is governed by the applicable local law of *respondeat superior,* accordingly, in this action, District of Columbia law is controlling. *See First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba,* 462 U.S. 611, 620, 103 S.Ct. 2591, 2597, 77 L.Ed.2d 46 (1983); *Joseph v. Office of the Consulate General of Nigeria,* 830 F.2d 1018, 1025 (9th Cir.1987), *cert. denied,* 485 U.S. 905, 108 S.Ct. 1077, 99 L.Ed.2d 236 (1988); *Skeen v. Federative Republic of Brazil,* 566 F.Supp. 1414, 1417 (D.D.C.1983). The District of Columbia Court of Appeals has established a two-prong test to determine the liability of an employer for torts committed by an employee.[5] First, the tort must be "actuated," at least in part, by a purpose to further the employer's business, and second, the tort must not be unexpected in view of the employee's duties. *Weinberg v. Johnson,* 518 A.2d 985, 990 (D.C. 1986).

■■■ Implicit in the first prong of the scope of employment test—the "purpose" or "intent" requirement—is the concept that the employer may not be held vicariously liable for any act committed solely for the employee's own purposes. *Id.; District of Colum-*

bia v. Coron, 515 A.2d 435, 438 (D.C.App. 1986). As solely a question of common sense, it is difficult to comprehend how any sexual assault could be committed for a purpose other than that of the individual. Sexual assault is, by its nature, a crime committed for personal reasons. *See Penn Cent. Transp. Co. v. Reddick,* 398 A.2d 27, 31 (D.C.1979) ("The outrageous quality of an employee's [sic] act may well be persuasive in considering whether his motivation was purely personal.") (citations omitted); *Jordan v. Medley,* 711 F.2d 211, 215 (D.C.Cir. 1983) (an intentional tort by its very nature is "willful and thus more readily suggests personal motivation."); *see also Boykin v. District of Columbia,* 484 A.2d 560, 562 (D.C. 1984) (employer not liable for sexual assault committed by educator against a student because the "assault was in no degree committed to serve the school's interest but rather appears to have been done solely for the accomplishment of [the employee's] independent, malicious, mischievous and selfish purposes."). As a general matter, regardless of Al–Uneizi's official title or responsibilities in the Ministry of Defense, the assault he is alleged to have committed could not have been committed even partially in furtherance of any duties he owed Kuwait. Indeed, it is difficult to imagine any employer more likely to be harmed by a sexual assault committed by its employee while in a foreign country than a diplomatic entity.

To fit within this prong, Guzel argues that the conversation with Al–Uneizi regarding the restocking of the mini-bar in room 612 places his actions within the scope of his employment. This proposition is without merit. Although Al–Uneizi requested that the mini-bar in room 612 be restocked and Al–Uneizi's duties may well have encompassed overseeing amenities offered by the Willard, there is absolutely no allegation that

---

5. As a general rule, whether an employee is acting 'within the

 scope of his employment' is a question of fact for the jury. It becomes a question of law for the court, however, if there is not sufficient evidence from which a reasonable juror could conclude that the action was within the scope of the employment.

*Boykin v. District of Columbia,* 484 A.2d 560, 562 (D.C.App.1984); *see Signal Constr. Corp. v. Stan-*

bury, 586 A.2d 1204, 1217 (D.C.App.1991); *cf. Hoston v. Silbert,* 681 F.2d 876, 879 (D.C.Cir. 1982) (scope of employment is "ultimately a legal question"). Thus, whether or not Guzel is entitled to a jury trial under the FSIA, the Court may determine scope of employment where there is insufficient evidence from which a reasonable juror could conclude that Al–Uneizi's actions on September 20, 1991 fell within the scope of his employment with Kuwait.

the assault resulted from Al–Uneizi's request. Not until after she restocked room 612 as requested by Al–Uneizi and began to service room 610, a different room, does Guzel allege that Al–Uneizi assaulted her. *Id.,* ¶¶ 6, 7. As a consequence, the alleged assault committed by Al–Uneizi could not have furthered any interest of Kuwait. Although Al–Uneizi's duties may have included interaction with hotel employees, assaulting an employee cannot be considered in furtherance of his employer's interests, no matter what Al–Uneizi's duties were, diplomatic or not. To conclude that simply being "on duty" imposes liability on an employer would impose liability "regardless of the nature of an [employee's] conduct." *Coron,* 515 A.2d at 438. The *Coron* Court refused to do so and this Court will do no less. In sum, Guzel has not satisfied this prong of the *Weinberg* test.

■■■ Nor has she demonstrated that the assault was not unexpected in light of Al–Uneizi's services. The second prong, loosely termed "foreseeability," requires that the tortious act be incidental to conduct which the employer has authorized. *Weinberg,* 518 A.2d at 990. The Restatement of Agency clarifies this, stating that conduct "different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master" does not fall within an individual's scope of employment. *Coron,* 515 A.2d at 437 (quoting Restatement (Second) of Agency § 228(2) (1958)). Or stating the same proposition in its negative:

> [T]here are two ways in which an employee's acts may be outside the scope of employment. First, the employee may simply be "off the job," pursuing his own business on his own time. Second the act committed by the employee may be so far beyond

the types of activities that the employer could foresee might be committed as a result of the employment that the employer will not be liable, even though the employee was actually "on the job."

*Skeen v. Federative Republic of Brazil,* 566 F.Supp. 1414, 1418 (D.D.C.1983) (citing *Penn Central,* 398 A.2d at 30–31). In the instant case, Al–Uneizi was apparently "on the job," but the assault he is alleged to have committed is "so far beyond the types of activities that the employer could foresee might be committed as a result of the employment" that Kuwait cannot be held liable.

■■■ Neither is this case an "outgrowth of a job-related controversy" such as the District of Columbia Court of Appeals found in *Johnson v. Weinberg,* 434 A.2d 404, 408–09 (D.C.App.1981). *Johnson* involved an assault, triggered by a dispute over the conduct of an employee which was beneficial to the employer's business.[6] In *Johnson,* a laundromat customer shot by an employee of the laundromat, subsequently sued its owners. *Id.* at 406. The assault stemmed from an argument between the employee and customer concerning the customer's missing laundry. *Id.* The Court hinged its holding that liability was a question of fact for the jury on the conclusion that "where a tort is the outgrowth of a job-related controversy, 'then the employer remains liable since the master and servant relationship is not broken.' "[7] *Id.* at 408 (citations omitted). Guzel mistakenly attempts to analogize her case to *Johnson* by asserting that Al–Uneizi's job duties included the responsibility of interacting with hotel employees. Guzel does not contend, however, that Al–Uneizi's actions were the result of a job-related controversy between herself and Al–Uneizi.[8] The mere fact that the em-

6. Furthermore, the District of Columbia Court of Appeals has since remarked that *Johnson* "approaches the outer limits of liability that may be imposed under *respondeat superior." Boykin v. District of Columbia,* 484 A.2d 560, 563 (D.C.App.1984).

7. Nor does *Lyon v. Carey,* 533 F.2d 649 (D.C.Cir. 1976) assist plaintiff. Although the Court, in *Lyon,* found an employer liable for a sexual assault committed by its employee, that case is readily distinguishable because, in contrast to this case, it was found in *Lyon* that the assault

was triggered or motivated by a dispute over the employer's business. *Id.* at 655. Moreover, the facts with which *Lyon* dealt constituted "perhaps the outer bounds of *respondeat superior." Id.* at 651.

8. The record indicates only that the assault occurred sometime after Al–Uneizi's request for the servicing of the mini-bar in room 612, and after Guzel had left that room for her work in another room of the hotel. Plaintiff's Motion, Guzel Affidavit, ¶¶ 6, 7. There is no allegation that the alleged assault somehow arose out of the conver-

**12**

ployment situation may provide an employee with an "opportunity to pursue his personal adventure" is insufficient to hold an employer vicariously liable for an employee's intentional torts. *Boykin v. District of Columbia,* 484 A.2d 560, 563 (D.C.1984).

Finally, Guzel's argument that by attaching a flag pin of the American and Kuwaiti flags onto her jacket post-assault, Al–Uneizi acted in furtherance of the State of Kuwait's interests is not sufficient to meet the scope of employment exception to sovereign immunity. *See* Supplemental Memorandum in Support of Plaintiff's Response to defendant State of Kuwait's Motion to Dismiss, or in the alternative for Summary Judgment, at 10 n. 10. It would take a feat of imagination to comprehend how placing a pin with a Kuwaiti flag could transform an assault into an action which falls within Al–Uneizi's scope of employment.

On this record, resolving all reasonable inferences in the plaintiff's favor, the Court finds that the alleged actions of Al–Uneizi were not within the scope of his employment. Guzel has failed to demonstrate that Al–Uneizi's actions met either prong of the District of Columbia's two-step *respondeat superior* liability test. Although Al–Uneizi's duties likely included the responsibility of interacting with hotel employees, the assault does not in any way further the State of Kuwait's interests. Nor could Kuwait have foreseen that an assault would occur any more than any employer whose employees come into contact with other persons. To conclude otherwise would effectively eviscerate the current test. This being the case, the Court must dismiss Kuwait from this proceeding for lack of jurisdiction under the Foreign Sovereign Immunities Act.

### CONCLUSION

Accordingly, for the reasons stated above, it is hereby

---

sation between Al–Uneizi and Guzel. Nor is any argument or dispute alleged.

9. As Kuwait indicated in its Memorandum of Points and Authorities in Opposition to Plaintiff's Motion for Continuance or Refusal of Kuwait's Motion for Summary Judgment ("Kuwait's Opposition"), dismissal without prejudice of this

ORDERED that Plaintiff's Motion for Leave of Court to File a Supplemental Response is granted; it is

FURTHER ORDERED that Defendant State of Kuwait's Motion to dismiss is granted. The State of Kuwait is dismissed without prejudice [9]; and it is

FURTHER ORDERED that Plaintiff's Motion for Continuance or Refusal is denied.

IT IS SO ORDERED.

defendant does not deprive plaintiff of due process. Should discovery uncover new evidence which would support a finding that the alleged assault fell within the scope of Al–Uneizi's employment with the State of Kuwait, plaintiff could move to reopen its case against the State of Kuwait. Kuwait's Opposition, at 12–13.