Brenda Lynn FRANKLIN, Plaintiff,

v.

KING LINCOLN–MERCURY–SUZUKI,
INC., Defendant.

No. CIV. A. AW–98–3432.

United States District Court,
D. Maryland,
Southern Division.

June 16, 1999.

Damon L. Bell, Rockville, MD, for Plaintiff.

Kevin C. McCormick, Melissa Lynn Menkel, and Whiteford, Taylor and Preston, Baltimore, MD, for Defendant.

## MEMORANDUM OPINION

WILLIAMS, District Judge.

Pending before the Court is Defendant's Motion for Summary Judgment. Plaintiff has opposed the motion, and Defendant has replied accordingly. No hearing is deemed necessary. Local Rule 105.6 (D.Md.). Upon consideration of the motion, and careful attention given to the arguments in support of and opposition to, and for the reasons stated below, the Court will deny the motion.

## BACKGROUND

As the parties are before the Court on Defendant's summary judgment motion, the facts, and all reasonable inferences drawn therefrom, will be viewed in the light most favorable to Plaintiff.[1] As such, from June 25, 1996 until September 16, 1996, Brenda Lynn Franklin was employed as a car salesperson for the Defendant car dealership, King–Lincoln–Mercury–Suzuki, Inc. (hereinafter "King"), and was the only female salesperson of ten. During her employment, and over the course of about a month, Franklin alleges that she was sexually harassed on numerous occasions by various co-workers. In particular, Franklin claims that a male employee made sexually suggestive comments while using a banana as a penis, and that another repeatedly made "grinding body gestures" as he walked past her at work.

Franklin, however, alleges that the lion's share of the harassment was allegedly perpetrated by Ali Mohammed, a King salesperson. Franklin claims that on numerous occasions Mohammed verbally threatened and harassed her, and would frequently call her by the name of "M & M," which she claims stood for "mental masturbation." Franklin further alleges

1. As an initial matter, the Court has taken note of the factual allegations presented in King's summary judgment motion and reply. King spends an inordinate amount of time providing information, in a somewhat derisive manner, about Franklin that is totally irrelevant to the causes of action in the instant suit. The Court is befuddled as to the necessity and utility of providing such information as her criminal, socio-economic, and familial backgrounds, religious convictions, and her post and pre-King employment. This case solely concerns the alleged sexual harassment that took place during her employment with King from June 25 through September 16, 1996. Franklin was not terminated from King, so her qualifications are not at issue. Although this information may contain a kernel of relevance with regard to Franklin's credibility, it should be reserved for trial and not inundated in a motion for summary judgment.

that Mohammed would grab his penis through his pants while making such lewd comments as, "why order out when you can have fresh meat right here." Pl.'s Opp. Mtn. at 2. On one occasion, allegedly as reprisal for a customer deciding not to purchase a car from him, Mohammed photocopied the customer's driver's license and drew a picture of a penis on the picture accompanied by the words, "suck my dick," and placed it on Franklin's desk. In addition, Franklin claims that there was an instance where several of the male employees, including Mohammed, engaged in a "penis measuring contest" on the showroom floor. Franklin alleges that these employees exposed their penises, and then took measurements with a ruler.

Franklin contends that all of these incidents occurred either in the presence, or was brought to the attention, of management or her supervisor. However, Franklin claims that no remedial action was taken. Consequently, Franklin claims that the work environment became so hostile and oppressive that she was forced to resign. She now brings this action alleging sexual harassment and discrimination in violation of Title VII, as well as a common law claim of intentional infliction of emotional distress.

## DISCUSSION

### I. Standard of Review on Summary Judgment

"Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (citations omitted). Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judg-

ment will be granted when no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Since the matter is before the Court on King's motion for summary judgment, "[Franklin's] version of the facts must be presented where the parties versions conflict, at least to the degree that her allegations have support in affidavits, depositions or other documentary evidence." *Paroline v. Unisys Corp.,* 879 F.2d 100, 102–103 (4th Cir.1989), *vacated in part on other grounds* 900 F.2d 27 (4th Cir.1990). While Franklin's evidence is to be believed and all justifiable inferences drawn in her favor, she cannot create a genuine dispute of material fact through mere speculation or compilation of inferences. *Runnebaum v. NationsBank of Md., N.A.,* 123 F.3d 156, 164 (4th Cir. 1997) (citing *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505). Thus, to defeat the motion for summary judgment, Franklin must present evidence of specific facts from which the finder of fact could reasonably find for her. *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505; *Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548.

### II. Hostile Work Environment

■ Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C.A. § 2000e–2(a)(1) (West 1998). Such unlawful discrimination may also manifest itself in the form of carried out threats affecting "tangible employment benefits" (quid pro quo), or of conduct so offensive that it creates an abusive workplace (hostile work environment).[2] Here, Franklin has al-

---

2. The Supreme Court has recently announced that use of such terms in defining the type of discrimination is of limited utility, except with

regard to "the threshold question whether a plaintiff can prove discrimination in violation of Title VII." *Burlington Industries, Inc. v.*

leged the latter. As such, she must prove that her workplace was "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher v. City of Boca Raton,* 524 U.S. 775, 118 S.Ct. 2275, 2283, 141 L.Ed.2d 662 (1998) (citing *Harris v. Forklift Systems, Inc.* 510 U.S. 17, 21–22, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)). Thus, in order to establish a prima facie case of hostile environment sexual harassment, Franklin must show that: (1) she was subjected to unwelcome sexual harassment in the form of sexual advances, requests for sexual favors or other verbal or physical conduct of a sexual nature; (2) the harassment was based on sex; (3) the sexual harassment had the effect of unreasonably interfering with her work performance in creating an intimidating, hostile or offensive working environment that seriously affected her psychological well-being; and (4) that there is a basis for King's liability. *See Causey v. Balog,* 162 F.3d 795, 801 (4th Cir.1998).

In determining whether an environment is sufficiently hostile or abusive, the Supreme Court and the Fourth Circuit have instructed courts to look at the totality of the circumstances giving rise to the claim. *See e.g. Harris,* 510 U.S. at 21–22, 114 S.Ct. 367; *Beardsley v. Webb,* 30 F.3d 524, 529 (4th Cir.1994). This entails, but is not limited to, looking at "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris,* 510 U.S. at 23, 114 S.Ct. 367. The Supreme Court has recognized the difficulty in precisely defining what will or will not, in the virtually infinite number of varying circumstances, constitute a violation of Title VII:

> *Ellerth,* 524 U.S. 742, 118 S.Ct. 2257, 2265, 141 L.Ed.2d 633 (1998). While this diminished the significance of how a Title VII sexual harassment claim is labeled, the Court left

[T]hat inquiry requires careful consideration of the social context in which particular behavior occurs and is experienced by its target .... The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed. Common sense, and an appropriate sensitivity to social context [are required].

*Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 118 S.Ct. 998, 1003, 140 L.Ed.2d 201 (1998). Although the precise contours of what constitutes a hostile work environment have not been fully defined, it is clear that the conduct must be so extreme to amount to a change in the terms and conditions of employment. *See Faragher,* 118 S.Ct. at 2283–84.

Here, the Court has found the record to contain a paucity of corroborating evidence concerning the alleged conduct. Although Franklin relies predominantly on her own affidavit and deposition testimony for what happened, she does support her claims with evidence that she did notify someone, Jack Peck, a King employee, of the harassment when it allegedly occurred. *See* Def.'s S.J. Mtn., Ex. 2. This, at least, raises the inference that something was awry during this time. As for whether the harassment actually occurred remains to be a genuine issue of material fact. This is because King has presented no evidence that the alleged conduct did not occur. It simply has argued that Franklin never brought her complaints to the attention of a member of management. *See* Def.'s S.J. Mtn., Exs. 1, 3, 7.

Nevertheless, the Court has found that Franklin has established the first three elements of a prima facie case of hostile work environment sexual harassment during the time that she was em-

> intact the well-developed standards used to determine whether a prima facie claim has been made out under either theory. *See id.*

ployed. There is no doubt that the alleged comments and conduct, which are claimed to have been an incessant barrage over the course of a month, could be offensive to a reasonable woman, let alone Franklin, whom her co-workers knew was an extremely religious woman. *See Oncale,* 118 S.Ct. at 1003 ("objective severity of harassment should be judged from perspective of a reasonable person in plaintiff's position, considering 'all the circumstances'") (citing *Harris,* 510 U.S. at 23, 114 S.Ct. at 371). Additionally, Franklin was the only female salesperson, which would seem to exacerbate the alleged hostile environment. These alleged overt and unwelcomed sexual gestures and comments that were purposely directed at Franklin appear to cross the line of the non-actionable, and occasional vulgar banter, simple teasing or offhand remarks. *See Faragher,* 118 S.Ct. at 2283–84. Furthermore, exposing oneself in public not only falls well outside the bounds of common decency, but also borders the criminal. Thus, the Court finds that Franklin has created a genuine dispute of material fact with regard to the alleged sexual harassment creating a hostile work environment for her.

 Once a hostile work environment has been established, the Court must then look to the issue of liability—the fourth and final element. Employers are vicariously liable for a co-worker's harassment only "when they have been negligent either in discovering or remedying the harassment." *Perry v. Harris Chernin, Inc.,* 126 F.3d 1010, 1013 (7th Cir.1997). The employer's legal duty in co-worker harassment cases will be discharged when it takes "reasonable steps to discover and rectify acts of sexual harassment by its employees." *Id.; Baskerville v. Culligan Int'l Co.,* 50 F.3d 428, 432 (7th Cir.1995). Thus, in determining whether King had notice of the harassment, the Court must first ascertain whether it had an estab-

lished means for which complaints of harassment could be filed. *See Young v. Bayer Corp.,* 123 F.3d 672, 674 (7th Cir. 1997). Courts have held that where an employer sets up a "point person" to accept complaints, "this person becomes the natural channel for the making and forwarding of complaints, and complainants can be expected to utilize it in the normal case." *Young,* 123 F.3d at 674. However, where the company fails to identify a point person, or that individual was not easily accessible, "judicial inquiry will have to turn to who in the company the complainant reasonably believed was authorized to receive and forward (or respond to) a complaint of harassment." *Id.*

Here, although a sexual harassment policy statement was uncovered during discovery, there is no evidence in the record that a policy was ever promulgated during the period that Franklin was employed. King has not offered any evidence that it had a policy during this time, or that Franklin was told or was aware that one existed.[3] Thus, the Court must proceed, *in accordance with the facts as presented by Franklin,* and assume there was no policy.

 This being the case, the Court must determine whether King received notice of the alleged harassment so as to trigger its coordinate duty to take reasonable steps to rectify the problem. Franklin alleges, and the record supports, that she told Jack Peck of the harassment. Franklin claims that she told Peck because she considered him her supervisor or "overseer." *See* Def.'s S.J. Mtn., Ex. 4, Franklin Depo. at 220. Franklin reasoned that because Peck was responsible for her training when she started, and at times oversaw her progress, he was in a position of authority to receive her complaints. *Id.*

3. All that King provides are several undated, unsigned documents that purport to contain its policy on sexual harassment. *See* Pl.'s Opp. Mtn., Exs. 7–10. While several of the documents provide for the employee's acknowledgment of the policy by way of a signature, King failed to provide any signed by Franklin.

King, on the other hand, asserts that Peck was not Franklin's supervisor, but rather a salesperson. As such, King argues that Franklin's informing Peck of the alleged harassment cannot impute notice to it. The Court disagrees. First, since there was not an established sexual harassment complaint procedure in place when Franklin was employed, she had to resort to telling someone who she reasonably believed was authorized to take some action. Peck fit this bill. Peck was a Senior Salesperson, who trained Franklin when she started, and most likely was the first person with whom Franklin built a working relationship. Peck also personally investigated a couple of Franklin's charges of harassment, which King relies on to substantiate its position that the harassment never occurred.[4] *Id.*, Ex. 2, ¶ 6. Thus, for purposes of the present summary judgment motion, the Court finds that Franklin could reasonably expect Peck to refer her complaints up the ladder to a person who could act on it.

Second, Franklin alleges that members of King management, including the general manager Tim McNulty, witnessed some of the alleged conduct first-hand. The Court notes that virtually all of the alleged acts of sexual harassment took place on the showroom floor of the dealership which, by design, is a distinctively communal employment forum. The penis measuring contest occurred on the showroom floor, and many of the individual incidents involving verbal abuse or sexually explicit gestures allegedly took place in the presence of other employees. *See Young*, 123 F.3d at 674 (noting that an employer may be charged with constructive knowledge of sexual harassment, even if unreported, if the harassment was so broad in scope, and so permeated the workplace, that it must have come to the attention of someone authorized to do something about it.).

Moreover, in the instance where Mohammed allegedly drew a picture of a penis on the photocopied driver's license of a customer, Franklin claims that when she brought the picture to the attention of management, she was told to throw it away. Thus, in either case, the Court finds that Franklin has presented a genuine issue of material fact that King had enough information for it to reasonably conclude that at least some acts of harassment had occurred.

Finally, this brings the Court to its next inquiry, whether King took reasonable measures to rectify the alleged conduct. However, since King has denied knowledge or notice, it cannot plausibly argue that it adequately responded. Accordingly, King's motion for summary judgment with regard to this claim will be denied.

### III. *Intentional Infliction of Emotional Distress*

Franklin's claim for intentional infliction of emotional distress is before the Court for the second time. In the first instance, on King's motion to dismiss, the Court recognized that there were very few cases in which the Maryland Court of Appeals has upheld claims of intentional infliction of emotional distress, and none where there has been no physical conduct alleged. *See* Memorandum Opinion at 4–5 (Nov. 13, 1998). Absent Maryland's highest court establishing a bright line test requiring proof of physical contact for the tort of intentional infliction of emotional distress, this Court was not willing to render the scope of the tort that narrow. *See id.* at 5. A proviso was given, however, that Franklin would have to ultimately present cogent and legally sufficient evidence of specific facts from which the finder of fact could reasonably find for her to later survive summary judgment. *See id.* at 6

---

4. Peck would later conclude that the claim about the penis measuring contest was meritless. He determined that the contest was actually a debate amongst the salesmen over the length of the Mercury Villager, and not of their penises. Peck claimed that the ruler was used to measure this 190 inch or more minivan; the dimensions of which are generally provided in the brochure found in new car showrooms.

Now, on King's motion for summary judgment, Franklin must demonstrate that:

(1) the conduct must be intentional or reckless;

(2) the conduct must be extreme and outrageous;

(3) there must be a causal connection between the wrongful conduct and the emotional distress;

(4) the emotional distress must be severe.

*Harris v. Jones,* 281 Md. 560, 566, 380 A.2d 611, 614 (1977). Maryland courts have accompanied the tort of intentional infliction of emotional distress with the warning that liability should be imposed sparingly, and " 'its balm reserved for those wounds that are truly severe and incapable of healing themselves.' " *Figueiredo–Torres v. Nickel,* 321 Md. 642, 653, 584 A.2d 69, 75 (1991) (quoting *Hamilton v. Ford Motor Credit Co.,* 66 Md.App. 46, 51, 502 A.2d 1057, 1065, *cert. denied,* 306 Md. 118, 507 A.2d 631 (1986)).

The behavior detailed above in the context of Title VII sexual harassment also establishes a prima facie claim of intentional infliction of emotional distress. While this may not be the case in most instances, it is here. *See, e.g., Bryant v. Better Business Bureau of Greater Maryland, Inc.,* 923 F.Supp. 720, 748 (D.Md. 1996). Mohammed and the other alleged harassers clearly acted intentionally; while the most egregious of the alleged conduct, the penis measuring contest, was done with reckless disregard to anyone who may have caught wind of what they were doing. Notwithstanding, Maryland's high standard of culpability associated with the tort, this type of behavior was "so extreme in degree, as to go beyond all possible bounds of decency," and undoubtedly would "be regarded as atrocious, and utterly intolerable in a civilized community." *Batson v. Shiflett,* 325 Md. 684, 734, 602 A.2d 1191 (1992) (citation omitted). Moreover, this conduct was even more deplorable to Franklin, who had made it known to her former co-workers that she was a devout Christian woman. *See Harris,* 281 Md. at 568, 380 A.2d at 615 ("The personality of the individual to whom the misconduct is directed ·is also a factor."). Finally, for purposes of summary judgment, Franklin has established that the alleged harassers caused her severe emotional distress. Franklin has shown not only that she experienced humiliation, embarrassment, and horror soon after she was harassed, but also that she suffers from, among other things, post-traumatic anxiety, depression, nausea, compulsive behavior, and nightmares. *See* Pl.'s Opp. Mtn., Exs. 18–20. Thus, Franklin has established a prima facie case of intentional infliction of emotional distress, and thereby created a genuine issue of material fact. Accordingly, Defendant's motion for summary judgment will be denied as to this claim.

A separate Order consistent with this Opinion will follow. ·