**Marie THOMAS, Plaintiff,**

v.

**BET SOUND–STAGE RESTAU-RANT/BRETTCO, INC., et al., Defendants.**

**No. Civ.A. AW–99–316.**

United States District Court, D. Maryland, Southern Division.

Sept. 1, 1999.

---

Jon Wyndal Gordon, Baltimore, MD, for plaintiff.

Thomas Matthew Buchanan, John R. Ates, Donn C. Meindertsma, Chevanniese Smith, Winston & Strawn, Washington, DC, for defendant BET Sound–Stage Restaurant/BrettCo., Inc.

Thomas Langley McCally, Carr Goodson Warner, Washington, DC, for defendants Xanadu Management & Consulting Company, Inc. and Roy Dabney.

### *MEMORANDUM OPINION*

WILLIAMS, District Judge.

Pending before the Court are the following motions: (1) Defendant BrettCo's Motion to Dismiss; (2) Defendant Xanadu Management's Motion to Dismiss; (3) Plaintiff's Motion to Strike Portions of Exhibits 2 and 3 to Motion to Dismiss of Xanadu Management; (4) Plaintiff's Motion to Strike Portions of Affidavit and Exhibits to BrettCo's Reply; (5) Plaintiff's Motion for Leave to File Amended Complaint; (6) Defendant Xanadu Management's Supplemental Motion to Dismiss; and (7) Defendant BrettCo's Supplemental Motion to Dismiss. No hearing is deemed necessary. Local Rule 105.6 (D.Md.). The Court will address each motion below.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Marie Thomas brought this action against Defendants Roy Dabney, BrettCo, Inc. ("BrettCo") and Xanadu Management ("Xanadu") alleging sexual harassment, as well as state common law claims. The alleged harassment arises out of Plaintiff's employment at BET Sound–Stage Restaurant (hereinafter "the restaurant") as a manager's assistant. Plaintiff's direct supervisor/manager was Roy Dabney, who was the assistant general manager of the restaurant. Plaintiff alleges that Dabney sexually harassed her for about one year from August of 1997 until June of 1998. Plaintiff claims Dabney physically assaulted her by groping her rear, putting his arms around her, touching her inner thighs, as well as repeatedly made sexually suggestive comments towards her. She also claims that on several occasions Dabney solicited her for sex, and at times showed up at her home unannounced. Plaintiff further alleges that after her repeated refusals to his offers, Dabney spread rumors about her being a lesbian to her co-workers.

Plaintiff claims that the harassment culminated to a level where she could no longer continue working at the restaurant, and on June 6, 1998 she quit. Thereafter, Plaintiff timely filed a complaint with the Prince George's County Human Relation Committee ("HRC"), and named "BET Sound Stage" as the respondent. Two weeks after Plaintiff filed her complaint with the HRC, she requested a right to sue letter. Upon receipt of Plaintiff's letter, the HRC ceased its investigation, and on June 23, 1998 it forwarded her request to the Equal Employment Opportunity Commission ("EEOC"). *See* Xanadu's Supp. Mtn to Dismiss, Ex. 2. Then, on November 5, 1998 (135 days later), the EEOC issued a right to sue letter indicating that it was "unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of the charge," and that it was terminating its processing of the charge. *Id.*, Ex. 3. Plaintiff claims that she received the EEOC letter on November 7th or 9th. She then filed her action in this Court on February 5, 1999 alleging three claims under Title VII for sexual harassment, constructive discharge, and pattern and practice sexual harassment, and three state law claims for intentional infliction of emotional distress, assault and battery, and defamation.

## DISCUSSION

### I. Plaintiff's Motion to Amend Complaint

As an initial matter, Plaintiff has moved to amend her complaint for the following reasons: (1) to correct and/or indicate in her complaint that she received her right to sue letter from the EEOC on November 7th or 9th of 1998, *compare* Complaint at ¶ 11 with Proposed Amended Complaint at ¶ 11, and; (2) to reallege facts that Defendants BrettCo and Xanadu are joint employers and an integrated enterprise. *See* Proposed Amended Complaint at ¶¶ 5–9.

Both of the proposed amendments that Plaintiff intends to make to her complaint are reflected as counter-arguments in her oppositions to BrettCo and Xanadu's motions to dismiss. Thus, the Court will ultimately consider these allegations in ruling upon the pending motions to dismiss. As such, the Court sees no need to grant Plaintiff leave to amend her complaint before disposition of the pending motions.[1]

### II. Court's Rulings as a Matter of Law

Before the Court delves into the other motions, there are a number of issues that must first be resolved. Plaintiff has alleged claims for sexual harassment and constructive discharge under Title VII against the individual defendant, Roy Dabney. Notwithstanding the fact that Dab-

---

1. Since Defendant Dabney has answered the complaint, Plaintiff may not amend her complaint as a matter of course. *See* Fed.R.Civ.P. 15(a).

ney has chosen not to file a motion to dismiss, but rather answer the complaint, the Court, as a matter of law, cannot allow these claims to remain. It is well-established that supervisors cannot be held liable in their individual capacities for Title VII violations. *See Lissau v. Southern Food Service*, 159 F.3d 177, 181 (4th Cir. 1998). As such, all three Title VII claims (Counts I, II, and III) against Dabney will be dismissed.

■ Third, in Count III of the complaint, Plaintiff appears to bring a claim for pattern and practice sexual harassment. However, in *Lowery v. Circuit City Stores, Inc.*, the Fourth Circuit held that individual plaintiffs do not have a private, non-class cause of action for pattern or practice discrimination under Title VII. 158 F.3d 742, 760–61 (4th Cir.1998). Thus, Count III will be dismissed against all defendants.

## III. *Issues and Arguments Common to Both Defendants' Motions to Dismiss*

### A. Timeliness of Plaintiff's Complaint

Although Defendants BrettCo and Xanadu Management have filed separate motions to dismiss, they have made similar arguments with respect to a number of issues. As such, the Court will address these issues together. First, BrettCo and Xanadu argue that Plaintiff failed to timely file her complaint with this Court following her receipt of the right to sue letter from the EEOC. Defendants claim that since the EEOC issued its right to sue letter on November 5, 1998, Plaintiff's filing of the complaint in the instant action on February 5, 1999 was untimely since it was 92 days from the issuance of the right to sue letter, and outside the statutory 90–day period. *See* 42 U.S.C. § 2000e–5(f)(1). Plaintiff contends, however, that while the EEOC issued and sent the right to sue letter on November 5th, she did not receive the letter until November 7th or 9th.

■ The right to sue letter that was attached to Plaintiff's opposition motion shows that it was issued by the EEOC on November 5th. However, delivery of a right to sue letter to a plaintiff's home triggers the limitations period. *See Harvey v. City of New Bern Police Dept.*, 813 F.2d 652, 654 (4th Cir.1987). As Plaintiff has provided a document from the EEOC stating that it *mailed* the right to sue letter on November 5th, she had to have received it sometime thereafter. Absent specific evidence of the date of actual delivery of the right to sue letter, this Court will assume a three-day delivery period and conclude that the letter was delivered on Monday, November 9, 1998. *See* Fed. R.Civ.P. 6(e). This being the case, Plaintiff's complaint was timely filed.

### B. Vicarious Liability for Assault and Battery

■ With regard to the claim for assault and battery, both defendants argue that they cannot be held vicariously liable for such torts in a sexual harassment case. The Court agrees. While Maryland courts have not squarely addressed the narrow issue of whether an employer is vicariously liable for a sexual assault committed by its employee against a third party, it has discussed it in dicta. In *Tall v. Board of School Commissioners of Baltimore City,* the Maryland Court of Special Appeals was presented with the question of whether a teacher's act of beating a student on his arms and legs with a ruler was considered within the scope of teacher's employment, and as such, subject the board to vicarious liability under the doctrine of respondent superior. 120 Md.App. 236, 706 A.2d 659 (Md.Ct.Spec.App.1997). In considering the question before them, the court looked at cases in other jurisdictions for guidance. In particular, the court relied on *Boykin v. District of Columbia,* 484 A.2d 560 (D.C.1984). Therein, a school teacher was accused of sexually assaulting one of his students, and the student's parents brought an action for assault against the District of Columbia based on the doc-

trine of respondent superior. The *Boykin* court concluded, as a matter of law, that the employee's tortious conduct was not within the scope of his employment. *Id.* at 561. It reasoned that:

> The sexual attack by [the employee] on [the student] was unprovoked. It certainly was not a direct outgrowth of [the employee's] instructions or job assignment, nor was it an integral part of the school's activities, interests or objectives. [The employee's] assault was in no degree committed to serve the school's interest, but rather appears to have been done solely for the accomplishment of [the employee's] independent, malicious, mischievous and selfish purpose.

*Id.* at 562.

After approving the holding and reasoning of the *Boykin* court, the *Tall* court cited additional cases for the same proposition that an employer is not vicariously liable for sexual assaults committed by a school employee upon a student. *See Tall,* 706 A.2d at 670–71 (citing cases). One of the cases cited and approved by the Court of Special Appeals, however, dealt with a non-school employment relationship, *Smith v. American Express Travel Related Servs. Co.,* 179 Ariz. 131, 876 P.2d 1166 (App.1994). In *Smith,* the Arizona Court of Appeals held that, as a matter of law, an employer is not vicariously liable for sexual assault and harassment of its employee, as such acts are outside the scope of employment. *Id.* at 1171. Although the *Tall* court did not elaborate on the *Smith* decision, other than through its citation, it did tacitly approve it by using it as support for its holding.

Thus, absent a decision by a Maryland court squarely addressing the issue before this Court, the prevailing law in Maryland must be applied in the manner that its courts *would likely* have ruled. *See Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Talkington v. Atria Reclamelucifers Fabrieken BV,* 152 F.3d 254, 260 (4th Cir.1998) (stating that when faced with pendent state claims, federal courts "are bound to apply governing state law, as interpreted by the relevant state's highest court.... If the law is not entirely clear, we must rule as it appears the state court would rule.") (citations omitted). Based on the above, this Court believes that Maryland courts would follow the decision in *Smith.* As such, the Court finds that an employer cannot be held vicariously liable for sexual assaults committed by its employees or one it may have given apparent authority.

## C. Intentional Infliction of Emotional Distress

▪ Finally, with regard to the claim for intentional infliction of emotional distress, both defendants argue that Plaintiff has failed to allege sufficient facts to make out a prima facie claim. To establish a prima facie case for intention infliction of emotional distress, Plaintiff must establish (1) the conduct must be intentional or reckless; (2) the conduct must be extreme and outrageous; (3) there must be a causal connection between the wrongful conduct and the emotional distress; (4) the emotional distress must be severe. *Harris v. Jones,* 281 Md. 560, 566, 380 A.2d 611, 614 (1977); *Franklin v. King Lincoln–Mercury–Suzuki,* 51 F.Supp.2d 661 (D.Md.1999) (Williams, J.). Just like the *Franklin* case cited above, the Court is faced with the question of whether the alleged conduct was "so extreme in degree, as to go beyond all possible bounds of decency," and undoubtably would "be regarded as atrocious, and utterly intolerable in a civilized community." *Batson v. Shiflett,* 325 Md. 684, 734, 602 A.2d 1191 (1992) (citation omitted).

▪ In the instant case, although plaintiff may have established the first element in that Dabney intended his alleged actions, the fourth element in that Plaintiff claims she has tried to commit suicide twice as a result of the alleged conduct, and the third element by alleging facts that her suicidal tendencies were a direct

result of the alleged conduct, the Court does not believe that the facts of this case reach the level of "outrageousness" for the tort to lie. The most egregious of Plaintiff's allegations is that one day Plaintiff was wearing a pair of baggy jeans and Dabney walked up to her and allegedly "yanked" them down below her underwear. While there is no doubt that such conduct is unacceptable in the workplace, it does not appear to go beyond the vulgar teasing, bad taste, and poor judgment that Maryland courts have refused to find "extreme and outrageous." *See Dick v. Mercantile–Safe,* 63 Md.App. 270, 276, 492 A.2d 674 (the 'conduct must strike to the very core of one's being, threatening to shatter the frame upon which one's emotional fabric is hung). Thus, even considering all of the evidence in the light most favorable to Plaintiff, she has failed to allege sufficient facts to make out a prima facie claim for intentional infliction of emotional distress. *See Hamilton v. Ford Motor Credit Co.,* 66 Md.App. 46, 58, 502 A.2d 1057, 1063 (initial determination of whether elements of cause of action for intentional infliction of emotional distress have been satisfied rests with trial judge; if judge decides that reasonable men would not differ on any one of the elements, he is within his rights to grant motion to dismiss for failure to state cause upon which relief can be granted or to enter judgment notwithstanding verdict.).

## IV. *BrettCo's Motion to Dismiss*

### A. Whether BrettCo is an "Employer" Under Title VII

Having addressed the arguments common to both defendants, the Court will address the remaining issues in their motions to dismiss independently. Beginning with BrettCo, it argues that it is not an "employer" within the meaning of Title VII, despite the fact that it owns and does business as "BET SoundStage Restaurant."[2] The gist of BrettCo's argument is that it is a separate corporate entity that merely owns the restaurant, and that Defendant Xanadu, which is the management company that handles the operations of the restaurant, is the true employer of the employees.[3] BrettCo further claims that it does not employ the requisite number of employees (15) to be qualified as an "employer" under Title VII. *See* 42 U.S.C. § 2000e(b). Plaintiff, on the other hand, asserts that BrettCo is an "employer" within the meaning of Title VII. Plaintiff claims that BrettCo and Xanadu are "joint employers" because they are two entities that share or co-determine the essential terms and conditions of employment at the restaurant. However, in support of its argument, Plaintiff relies on the factors used in cases that deal with whether an individual is an "employee" or independent contractor (i.e. "economic realities" test). These factors are totally inapposite because the question before the Court is not whether Plaintiff is an "employee" under Title VII, but rather whether BrettCo is an "employer" under the same. *See Williams v. Grimes Aerospace Co.,* 988 F.Supp. 925 (D.S.C.1997) (utilizing test to determine who has control over an alleged employee under federal law).

▮ Instead, the more appropriate inquiry to be made, and factors to consider, in this instance is that under the "integrated enterprise" theory. The integrated enterprise test was adopted by the National Labor Relations Board ("N.L.R.B.") as a self-imposed jurisdictional restriction on the definition of "employer" under Title VII. *See N.L.R.B. v. Welcome–American Fertilizer Co.,* 443 F.2d 19 (9th Cir.1971). The Fourth Circuit has applied the inte-

**2.** The entity "BrettCo" consists of a board of directors (5 directors and· 5 officers) that owns the restaurant.

**3.** Section 2000e(5) defines the term "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person."

grated enterprise test when defining "employer" in Title VII cases. *See Johnson v. Flowers Indus.*, 814 F.2d 978 (4th Cir. 1987). The integrated enterprise theory makes corporations liable for another corporation's actions when the corporations are closely connected. In determining whether sufficient integration exists to treat the corporations as a single, integrated "employer," the Court must weigh four factors. *Radio and Television Broadcast Technicians Local Union 1264 v. Broadcast Serv. of Mobile, Inc.*, 380 U.S. 255, 256, 85 S.Ct. 876, 13 L.Ed.2d 789 (1965); *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1362 (10th Cir.1993). The factors are (1) interrelation of operations, (2) common management, (3) centralized control of labor relations, and (4) common ownership or financial control. *Frank*, 3 F.3d at 1362. The first three factors are weighed more heavily than the last. *Id.*

■ In applying the integrated enterprise test, courts have noted the following to be probative evidence that one company employs the other's employees for purposes of Title VII liability: (1) one company's employees hired and fired the other's employees and/or authorized lay offs, recalls, and promotions of such employees, *see Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1241 (2d Cir.1995); *Frank*, 3 F.3d at 1362; *Johnson*, 814 F.2d at 981; *Trevino v. Celanese Corp.*, 701 F.2d 397, 404 (5th Cir.1983); (2) one company routinely transferred employees between it and the other company, used the same work force, and/or handled the other's payroll, *see Johnson*, 814 F.2d at 981; *Armbruster v. Quinn*, 711 F.2d 1332, 1338 (6th Cir.1983); (3) one company exercises more than general oversight of the other's operations by supervising the other's daily operations, such as production, distribution, purchasing, marketing, advertising, and accounts receivable, *see Cook*, 69 F.3d at 1241; *Johnson*, 814 F.2d at 981–82; *Armbruster*, 711 F.2d at 1338; (4) the companies have common management in the form of interlocking boards of directors and/or common officers and managers. *See Frank*, 3 F.3d at 1364; *Johnson*, 814 F.2d at 982; (5) the companies fail to observe basic formalities like keeping separate books and holding separate shareholder and board meetings, *see Johnson*, 814 F.2d at 981; (6) the companies fail to maintain separate bank accounts, *see Johnson*, 814 F.2d at 982; (7) the companies file joint tax returns. *See Johnson*, 814 F.2d at 982.

■ It is important to note that several factors are of low or no probative value to this inquiry: (1) that the operations of the companies, themselves, are interrelated, *Frank*, 3 F.3d at 1362; (2) that one company ultimately benefits from the work of the other, *id.;* (3) that the supervisors of the subsidiary ultimately reported to officers in the parent company, or that certain high level management employees perform functions for both companies, *id.; Kelber v. Forest Electric Corp.*, 799 F.Supp. 326, 331 (S.D.N.Y.1992); (4) that one company has promulgated broad general policy statements regarding employment matters, including statements governing equal employment opportunity issues, particularly where the other has discretion concerning whether to use them, *Frank*, 3 F.3d at 1363; *Wood*, 725 F.Supp. at 1249; (5) that the companies have common advertising guidelines, *Frank*, 3 F.3d at 1363 n. 3; (6) that the plaintiffs believed that they were employees of the putative employer, *Marzano v. Computer Science Corp. Inc.*, 91 F.3d 497, 514 (3rd Cir.1996); and (7) that the plaintiffs belonged to the putative employer's pension plan, or that the putative employer served as the plan administrator for the other's severance pay plan. *Id.; Frank*, 3 F.3d at 1363.

■ Here, on a motion to dismiss and prior to discovery, there is not enough evidence in the record to determine whether BrettCo is an "employer" under the integrated enterprise analysis for purposes of Title VII liability. Plaintiff, however, has alleged sufficient facts in her complaint to survive the motion to dismiss.

## B. Defamation

In Maryland, to establish a prima facie case for defamation, "a plaintiff must ordinarily establish that the defendant made a defamatory statement to a third person; that the statement was false; that the defendant was legally at fault in making the statement; and that the plaintiff thereby suffered harm." *Rosenberg v. Helinski,* 328 Md. 664, 675, 616 A.2d 866 (1992). The defamatory statement must "expose a person to public scorn, hatred, contempt or ridicule." *Batson v. Shiflett,* 325 Md. 684, 722, 602 A.2d 1191 (1992).

Here, Plaintiff alleges that Dabney made false statements regarding Plaintiff's sexual preference (stating that she was a lesbian) to Denita Morris, an employee at the restaurant who allegedly is a lesbian. As a result, Plaintiff claims that Morris made sexual advances towards her, as well as touched her, and sexually harassed her.

The facts as alleged are typical of a defamation case, and there is no doubt that such comments would expose Plaintiff to contempt, even in today's society. *See, e.g., Bohdan v. Alltool Mfg., Co.,* 411 N.W.2d 902 (Minn.App.1987) (employees of defendant company defamed plaintiff by falsely stating or implying he was a homosexual, thus precluding summary judgment for defendant company, officers, shareholders, and other employees in defamation action); *Stokes v. Meimaris,* 111 Ohio App.3d 176, 675 N.E.2d 1289 (1996) (evidence was sufficient to support award of ex-wife's defamation action against her ex-husband based on letter written by ex-husband alleging that ex-wife was lesbian; ex-wife testified that she suffered humiliation and embarrassment among her colleagues as a result of letter.). As such, Plaintiff has alleged sufficient facts to establish all elements of the tort against Dabney in his individual capacity. As for the remaining defendants, Plaintiff has also established a prima facie case against them, since an employer may be held vicariously liable for defamatory falsehoods made by its employees. *See Embrey v. Holly,* 293 Md. 128, 140, 442 A.2d 966, 972 (1982).

## V. *Xanadu's Motion to Dismiss*

As for Xanadu's motion, the only remaining issue that has not been previously addressed concerns the charges Plaintiff filed with the HRC and the EEOC. In its motion, Xanadu moves to dismiss on the grounds that Plaintiff failed to name it as a respondent in her complaint filed with the HRC and EEOC. As mentioned, Plaintiff only named "BET Sound–Stage Restaurant" as respondent. However, despite this fact, Plaintiff claims that Xanadu still received notice of the charges.

The reason for the requirement that a Title VII action be brought only against the respondent(s) named in the administrative charge is two-fold: (1) to provide notice to the charged party and (2) to permit the EEOC to attempt voluntary conciliation of complaints by bringing the charged party before it. However, Title VII does not require procedural exactness from lay complainants: "EEOC charges must be construed with utmost liberality since they are made by those unschooled in the technicalities of formal pleading." *See Alvarado v. Board of Trustees of Montgomery Community College,* 848 F.2d 457, 460 (4th Cir.1988) (citing *Kaplan v. Int'l Alliance of Theatrical & Stage Employees,* 525 F.2d 1354, 1359 (9th Cir.1975)).

As such, courts have adopted exceptions to the general rule that an aggrieved party may not bring a civil suit against a party that was not named in the EEOC charge. Under the "identity of interest" exception, courts examine various factors in order to determine whether a party unnamed in the EEOC charge may be sued. The more common factors include: (1) similarity of interests between named and unnamed parties; (2) ability of the plaintiff to ascertain the unnamed par-

ty at the time of the EEOC charge; (3) notice of the EEOC charge by the unnamed party; and (4) prejudice. *See, e.g., Cook,* 69 F.3d 1235; *Virgo v. Riviera Beach Assocs.,* 30 F.3d 1350 (11th Cir. 1994).

Here, although Xanadu was not named as a respondent in Plaintiff's EEOC complaint, notice of the discrimination claim filed with the EEOC was sent to Fred Rosenthal, Vice President of BET Entertainment. *See* Pl.'s Opp to Xanadu's Mtn. to Dismiss, Ex. 3. Fred Rosenthal is also the President of Xanadu. In addition, as Xanadu is the management company for the restaurant, they have a similarity of interests. Further, all of the materials Plaintiff received while employed at the restaurant have the BET SoundStage Restaurant logo on it. Thus, it would be reasonable for Plaintiff to believe she was employed by the restaurant, despite whether or not it was the appropriate entity to be sued. *See Alvarado,* 848 F.2d at 460 (court found it reasonable for plaintiff to name the company where he thought he worked, although it was not the legally appropriate entity to "sue or be sued".) As such, Xanadu would suffer no prejudice from the fact that it was not named in Plaintiff's EEOC complaint since it ultimately received constructive notice of the charge.

## VI. *Plaintiff's Motions to Strike*

Plaintiff has moved to strike exhibits attached to both of the defendants' motions to dismiss. However, Rule 12(f) expressly provides that the motion is designed to strike from "any *pleading* any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." (emphasis added). As motions to dismiss are not pleadings, Plaintiff's motions to strike are inappropriate. *See Knight v. U.S.,* 845 F.Supp. 1372 (D.Ariz.1993) (a motion to strike only concerns striking matters from pleadings and a motion to dismiss was not pleading and could not be struck); *O'Connor v. Nevada,* 507 F.Supp.

546 (D.Nev.1981) (same). Thus, both motions to strike will be denied.

## VII. *BrettCo and Xanadu's Supplemental Motions to Dismiss*

As an initial matter, a motion to dismiss may be amended to include a defense or objection inadvertently omitted, despite Rule 12 not expressly providing for it. *See Martin v. Lain Oil & Gas Co.,* 36 F.Supp. 252 (E.D.Ill.1941) (permitting defendant to amend to add argument attacking court's jurisdiction). Defendants have both supplemented their motions to dismiss to add the additional ground for dismissal that Plaintiff has failed to exhaust her administrative remedies because she requested a right to sue letter from the EEOC before the 180 day limitations period expired.

The circumstances surrounding Defendants' allegations are as follows. Two weeks after Plaintiff filed her initial complaint with the HRC, she requested a right to sue letter. Upon receipt of Plaintiff's letter, the HRC ceased its investigation, and forwarded her request to the EEOC on June 23, 1998. *See* Xanadu's Supp. Mtn to Dismiss, Ex. 2. Thereafter, on November 6, 1998 (135 days later), the EEOC issued a right to sue letter indicating that it was "unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of the charge," and that it was terminating its processing of the charge. *Id,* Ex. 3. Defendants argue that the EEOC's early right to sue letter violates the 180 day waiting period for private suits established by 42 U.S.C. § 2000e–5(f)(1) (1994), which provides:

> If a charge filed with the Commission ... is dismissed by the Commission, or if within one hundred and eighty days from the filing of such charge ... the Commission has not filed a civil action ... or the Commission has not entered into a conciliation agreement to which the person aggrieved is a party, the

Commission ... shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge....

Notwithstanding § 2000e–5(f)(1), 29 C.F.R. § 1601.28(a)(2) (1998) provides that the Commission may, upon a complainant's request, authorize a private suit "at any time prior to the expiration of 180 days from the date of filing the charge with the Commission; provided, that [an appropriate Commission official] has determined that it is probable that the Commission will be unable to complete its administrative processing of the charge within 180 days from the filing of the charge."

Unfortunately, the Fourth Circuit has not squarely addressed this issue, and there is a split of authority among the circuits that have addressed it. Most recently, the D.C. Circuit held that the § 2000e–5(f)(1) prohibits private suits within 180 days after charges are filed, and that 29 C.F.R. § 1601.28(a)(2) violates the same. *See Martini v. F.N.M.A.*, 178 F.3d 1336, 1346 (1999). The Ninth and Eleventh Circuits have also squarely addressed this issue, however, they found that an early right to sue letter comports with Congress' intent underlying the 180–day provision. *See Sims v. Trus Joist MacMillan*, 22 F.3d 1059, 1061 (11th Cir.1994), *Brown v. Puget Sound Elec. Apprenticeship & Training Trust*, 732 F.2d 726, 729 (9th Cir.1984). Despite the fact that each circuit reached their decisions after reviewing both the legislative history and statutory language of § 2000e–5(f)(1), two very different conclusions were reached. However, without some direction from the Fourth Circuit on this issue, this Court finds the reasoning as set forth in the Ninth and Eleventh Circuits' opinions to be convincing. Thus, both defendants' supplemental motions to dismiss will be denied.

### CONCLUSION

Based on the above, the Court will: deny Plaintiff's Motion for Leave to File Amended Complaint; grant BrettCo's Motion to Dismiss as to Counts III, IV, and V, and deny it as to Counts I, II, and VI; grant Xanadu's Motion to Dismiss as to Count III, IV, and V, and deny it as to Counts I, II, and VI; deny Plaintiff's Motion to Strike Portions of Exhibits 2 and 3 to the Motion to Dismiss of Xanadu Management, and Motion to Strike Portions of Affidavit and Exhibits to BrettCo's Reply; deny Xanadu's Supplemental Motion to Dismiss; and deny BrettCo's Supplemental Motion to Dismiss. Further, the Court will dismiss, as a matter of law, Counts I, II, III, and IV against Defendant Dabney, and Count III against all defendants.

Thus, this leaves Plaintiff with claims for sexual harassment, constructive discharge, and defamation against Defendants BrettCo and Xanadu, and claims for assault and battery and defamation against Defendant Dabney. Meanwhile, a scheduling order will issue. A separate Order consistent with this Opinion will follow.