Victoria **RACHEL–SMITH**

v.

**FTDATA, INC.**

No. CIV.A. DKC 2001–3707.

United States District Court,
D. Maryland.

May 8, 2002.

---

Robert Scott Oswald, Noto and Oswald, PC, Washington, DC, for plaintiff.

Elena D. Marcuss, McGuire Woods, LLP, Baltimore, MD, Christina A. Volzer, John J. Michels, Jr., McGuire Woods, LLP, McLean, VA, for defendant.

## MEMORANDUM OPINION

CHASANOW, District Judge.

Presently pending and ready for resolution in this sexual harassment case is the motion of Defendant FTData to dismiss Counts I, III, and IV of the complaint pursuant to Fed.R.Civ.P. 12(b)(6). The issues have been fully briefed and no hearing is deemed necessary. Local Rule 105.6. For reasons that follow, the court shall grant the motion as to Counts III and IV and deny the motion without prejudice as to Count I.

## I. Background

The following facts are alleged by Plaintiff. On or about December 13, 1999, Plaintiff Victoria Rachel–Smith began her employment as a sales person with Defendant FTData, Inc., a Maryland corporation. Plaintiff's duties were to generate sales for FTData and she reported directly to FTData's General Manager, Frank McLallen.

Beginning in or about March 2000, McLallen would summon Plaintiff into his office, ask her to close the door, and attempt to engage her in conversations about sexual topics. On several occasions, sometimes in the presence of others, McLallen would make sexually explicit comments to Plaintiff, at least once making reference to his genitalia and his likely inability "to satisfy" Plaintiff.

Subsequently, McLallen began to make both physical and verbal sexual advances to Plaintiff. In or about June 2000, on the way to a work-related seminar, McLallen was driving and placed his hand on Plaintiff's thigh until she removed it. Later in June 2000, McLallen requested that Plaintiff meet him early one morning outside the office to assist him in preparing for a client meeting. At this meeting, McLallen told Plaintiff that if she were his wife, she would be able to stay home and relax and told her he wanted to take care of her.

Later that month, on or about June 20, 2000, McLallen summoned Plaintiff to his office, where he informed her that he was attracted to her and that all that was required of her to be happy in her job was to ensure that he was happy. Immediate-

ly thereafter, McLallen kissed Plaintiff on the mouth. Frightened by this overture and fearing for her job, Plaintiff reciprocated the kiss. On several occasions over the next several weeks, McLallen summoned Plaintiff into his office ostensibly for work-related purposes but then accosted her and attempted to force her to submit to his sexual advances. On another occasion, McLallen attempted to reach under her skirt, but Plaintiff stopped him. On at least one other occasion, McLallen touched her thigh while she was sitting at her workstation, and attempted to reach higher before she stopped him. McLallen again summoned Plaintiff into his office on or about June 21, 2000, and informed her that if she did as he asked in pleasing him and making him happy, they could take two-hour lunches and she could have money to buy whatever she wanted.

On June 26, 2000, McLallen sent Plaintiff an email requesting that she stay late that night to discuss some work-related issue. Plaintiff refused to stay late, declining via email, because she feared another sexual encounter. In that email, Plaintiff informed McLallen of her desire to cease all kissing and other sexual episodes with him. When Plaintiff refused McLallen's advances, he responded that he "didn't want to put [her] in this position," but that he "could convince [her] if [he] wanted to." Complaint, at ¶ 14. Plaintiff interpreted McLallen's response as a threat which he allegedly fulfilled on July 11, 2000, when Plaintiff was placed on probation for several alleged "violations of her employment." Complaint, at ¶ 15 At the same time, she was transferred off-site, to the office of FTData's customer, PG & E Corporation. Plaintiff protested her probation and transfer and submitted a letter in response, alleging that her treatment was unfair.

The last alleged assault occurred on August 1, 2000, when Plaintiff and McLallen were in the basement together for the purpose of retrieving a television set. McLallen chased Plaintiff around the television, attempting to physically accost her. Plaintiff protested verbally and physically and she successfully prevented any further accosting by getting on the elevator with the television after missing it three times. Following this alleged assault, in the Fall of 2000, Plaintiff formally complained to her employer about McLallen's treatment of her. The company launched what Plaintiff characterizes as a cursory investigation.

On or about December 18, 2000, Plaintiff made a complaint to the Maryland Commission on Human Relations which cross-filed her claims with the United States Equal Employment Opportunity Commission ("EEOC"). On Plaintiff's information and belief, the EEOC then cross-filed her claims with the Prince George's County Human Rights Commission ("PGCHRC"). In December 2000, the President of FTData, without Plaintiff's knowledge or consent, offered Plaintiff's continued services to the out-sourcing company after the expiration of her initial contract with them. The out-sourcing company renewed its contract with FTData for short-term periods through the middle of March, 2001. On or about February 1, 2001, Plaintiff was informed that the out-sourcing contract would not be renewed at the end of the then current six week term and that she would be terminated by FTData. The proffered reason for Plaintiff's termination was that there was no more work for her to perform, although she was aware of at least one vacancy for which she was qualified. Plaintiff was never given the opportunity to apply for any vacancies and her last day of work was April 6, 2001.

Plaintiff received a Notice of Right to Sue letter from the EEOC on or about July 24, 2001. Subsequently, Plaintiff filed a lawsuit in Maryland state court which was removed to this court on November 29, 2001. Pursuant to Fed.R.Civ.P. 12(b)(6), FTData moves to dismiss Count I (Prince George's County Human Rights Act), Count III (Negligent Hire/Retention) and Count IV (Assault).

## II. Standard of Review

A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) ought not be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). All that the Federal Rules of Civil Procedure require of a complaint is that it contain "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Comet Enters. Ltd. v. Air–A–Plane Corp.*, 128 F.3d 855, 860 (4th Cir.1997). "Given the Federal Rules' simplified standard for pleading, '[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, ——, 122 S.Ct. 992, 998, 152 L.Ed.2d 1 (2002), *quoting Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).

In reviewing the complaint, the court accepts all well-pled allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. *Ibarra v. United States*, 120 F.3d 472, 473 (4th Cir.1997). The court must disregard the contrary allegations of the opposing party. *A.S. Abell Co. v. Chell*, 412 F.2d 712, 715 (4th Cir.1969). The court need not, however, accept unsupported legal conclusions, *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir.1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir.1979).

## III. Analysis

### A. Exhaustion of administrative remedies (Count I)

Plaintiff attempts to bring a claim in Count I for a violation of § 2–222 of the Prince George's County Code which prohibits employers from making decisions about hiring, termination, or the conditions of employment based on discrimination. FTData contends that Count I should be dismissed for failure to exhaust administrative remedies because Plaintiff never filed a charge with the PGCHRC. Plaintiff argues that, on information and belief, her complaint was cross-filed with the PGCHRC by the EEOC. Further, she argues that any failure to comply with the filing requirement should be excused because she made a good faith effort to comply and allegedly believed the claim would be cross-filed with the PGCHRC when she filed it with the Maryland Commission on Human Relations.

Prince George's County is authorized to provide a private right of action by Maryland Code, Art. 49B § 42(a). However, the Maryland Code places certain restrictions on when an action may be brought, including a requirement in § 42(c) that an action, "may not be commenced sooner than 45 days after the aggrieved person files a complaint with the county agency responsible for handling violations of the

county discrimination laws." It is undisputed that Plaintiff never directly filed a charge with the PGCHRC, the county agency responsible for handling such violations. The claim Plaintiff filed with the Maryland Commission on Human Relations was cross-filed with the EEOC in Baltimore which she allegedly believed would then cross-file it with the PGHRC pursuant to its designation as a Notice Agency in 29 C.F.R. § 1601.74 and an alleged Work Sharing Agreement between the EEOC and the PGCHRC.

Discovery is not yet complete. This case will go forward on the merits as to the factually identical Title VII claim, making it premature at this time to resolve whether Plaintiff's claim was cross-filed with the PGCHRC or whether her purported failure to file it was in good faith. At the dismissal stage, the court does not have before it either the Work Sharing Agreement or a record of attempts at cross-filing the charge. The court can revisit this issue on a motion for summary judgment if it is raised by Defendant. Accordingly, the motion to dismiss will be denied without prejudice as to Count I.

*B. Negligent Hire/Retention preempted by Title VII (Count III)*

Defendant contends that Plaintiff's claim for negligent hire/retention arises out of her allegations of sexual harassment and so are preempted by the Maryland Human Relations Act ("MHRA") and/or Title VII. In contrast, Plaintiff argues that the MHRA and Title VII only preempt negligent supervision and training claims in the context of hostile work environment complaints. The current case, according to Plaintiff, does not involve a hostile work environment, but rather allegations that FTData had actual or constructive knowledge of the hazard McLallen posed to female employees which it disregarded by 1) hiring him and placing him in a position

where he could cause harm and 2) retaining him in a position where he could cause harm.

■ There is nothing in the caselaw that suggests that Count III should not be preempted given the facts alleged by Plaintiff. If a count does nothing more than duplicate a count brought under Title VII or the MHRA then that count should be dismissed. *See Crosten v. Kamauf,* 932 F.Supp. 676, 684 (D.Md.1996)("If [the negligence counts] do no more than attempt to impose liability on [the defendant] for its alleged failure to conform to the dictates of Title VII in its effort to prevent sexual harassment, or to properly respond to a report of sexual harassment, these Counts merely restate the claim brought under Title VII in Count II.") The rationale for this preemption is that the statutes are meant to provide remedial measures for violations of the public policy condemning sexual harassment. For the purposes of bringing a negligence claim, whether conduct is reasonable "within the meaning of tort law is not a floating concept but is itself rooted in public policy." *Maxey v. M.H.M. Inc.,* 828 F.Supp. 376, 378 (D.Md. 1993). In *Maxey,* the court held that, in the context of hostile environment sexual harassment, the source of the public policy was the statutory framework provided by Title VII and its state law counterparts. *Id.*

■ Whatever distinctions Plaintiff seeks to draw between the instant case and the hostile environment context, her allegations regarding McLallen's hiring and retention by FTData in a supervisory position over female employees sounds in the public policy mandate found in Title VII and its state counterparts. As in *Maxey* and *Crosten,* FTData could only be liable for its "failure to conform to the dictates of Title VII in its efforts to prevent sexual harassment." *Crosten,* 932

F.Supp. at 684. Accordingly, then, the negligent hiring/retention claim is merely duplicative and will be dismissed.

## C. Assault (Count IV)

FTData argues that Plaintiff's claim for assault in Count IV should be dismissed because, according to the facts alleged, McLallen was not acting within the scope of his employment.[1] Plaintiff contends, in contrast, that McLallen was acting in the scope of his employment because he had supervisory authority over Plaintiff, and the authority to alter the terms and conditions of her employment. Because, for reasons stated below, Plaintiff has not alleged that McLallen was acting within the scope of his employment under Maryland law when he committed the alleged tortious acts, Count IV will be dismissed.

█ "An employer is vicariously liable for the torts of its employee when the employee committed the tort within the scope of his employment." *Lee v. Pfeifer*, 916 F.Supp. 501, 508 (1996), *citing Sawyer v. Humphries*, 322 Md. 247, 587 A.2d 467 (1991)("The general test set forth in numerous Maryland cases for determining if an employee's tortious acts were within the scope of his employment is whether they were in furtherance of the employer's business and were 'authorized' by the employer.") At 322 Md. 247, 587 A.2d 467, 470. When determining whether conduct was in the scope of employment, particularly in cases involving intentional torts committed by an employee, *Sawyer:*

> framed the essential issue as whether the conduct occurred for personal reasons or for the purpose of furthering the employer's business. Thus, even if the incident occurred at work during normal business hours, a supervisor animated

by personal concerns would not be acting within the scope of his employment.

*Lee,* 916 F.Supp. at 508; *see also Thomas v. BET Sound–Stage Restaurant/BrettCo, Inc.,* 61 F.Supp.2d 448, 454 (D.Md.1999)(Applying Maryland law, "the Court finds that an employer cannot be held vicariously liable for sexual assaults committed by its employees or one it may have given apparent authority.")

█ Plaintiff misunderstands the test for scope of employment. In order to determine FTData's liability, the question is whether McLallen, who allegedly committed the tortious acts, did so for FTData's purposes and with the actual or apparent authority of FTData. It is not, as Plaintiff would have it, whether McLallen's alleged tortious acts involved his actual or apparent authority over Plaintiff. While Plaintiff has alleged that McLallen used his supervisory authority over her to attempt to coerce her to engage in sexual activity, she does not allege that he did so in furtherance of FTData's business. Further, contrary to Plaintiff's assertion in her opposition, she does not allege that FTData knew or should have known of the conduct so as to authorize it or that FTData ratified it. Plaintiff does allege that FTData knew or should have known of McLallen's "predilections" and that she complained of McLallen's treatment of her to a supervisor in Fall, 2000. However, her complaint to FTData occurred after the assaults allegedly occurred and nowhere does she allege facts demonstrating that FTData either ratified the assault or authorized McLallen to assault its employees. Plaintiff does not allege that McLallen was acting for the purposes of FTData in allegedly assaulting her and so does not

---

1. Plaintiff also contends that Count IV should be dismissed because, as an assault claim, it is preempted by the Maryland Worker's Compensation Act. Because McLallen was not acting in the scope of his employment, it is not necessary to reach the preemption question.

allege that he acted in the scope of his employment. Accordingly, Count IV will be dismissed.

## IV. Conclusion

For the foregoing reasons, the court will grant the motion to dismiss as to Counts III and IV and deny the motion without prejudice as to Count I. A separate order will be entered.

### ORDER

For the reasons stated in the foregoing Memorandum Opinion, it is this ____ day of May, 2002, by the United States District Court for the District of Maryland, ORDERED that:

1. The motion of Defendant to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) BE, and the same hereby IS, granted as to Counts III and IV;

2. The motion of Defendant to dismiss BE, and the same hereby IS, DENIED WITHOUT PREJUDICE as to Count I;

3. Counts III and IV BE, and the same hereby ARE, DISMISSED;

4. The Clerk transmit copies of the Memorandum Opinion and this Order to counsel for the parties.